COURT OF APPEALS OF VIRGINIA


Present:    Judges Frank, Humphreys and Kelsey
Argued at Chesapeake, Virginia


DEBRA DIANE SCRANTON ROBBINS

                                                          OPINION BY
v.        Record No. 2333-05-1                     JUDGE D. ARTHUR KELSEY
                                                          AUGUST 1, 2006

JOSEPH ALLEN ROBBINS


             FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                              H. Thomas Padrick Jr., Judge

                  Barry Dorans (Cheshire I'Anson Eveleigh; John F. Sawyer;
                  Wolcott Rivers Gates, P.C., on briefs), for appellant.

                  Lawrence D. Diehl for appellee.


       Appealing a final divorce decree, Debra D.S. Robbins argues that the circuit court abused

its discretion in accepting a commissioner's recommendations on equitable distribution and

spousal support.[1]  The commissioner, she contends,

        •   failed to revalue the marital home closer to the date of distribution,

        •   mistakenly classified stock in husband's professional corporation as
            nearly all separate property,

        •   erroneously divided the equitable distribution assets on a 65/35 ratio
            in favor of husband, and

        •   incorrectly calculated the spousal support award.

We reject wife's challenge to the 65/35 division ratio, finding it well within the discretionary

authority of the circuit court.  To varying degrees, however, we agree with the remaining

challenges to the final decree.  We thus affirm in part, reverse in part, and remand for further

proceedings consistent with this opinion.

---

        [1] Judge Frederick B. Lowe made this ruling from the bench.  Judge Padrick signed the
final decree on August 30, 2005.

I.

Debra D.S. Robbins and Joseph A. Robbins married in 1977. Husband was starting his medical career as a cardiologist, while wife worked as a nurse. He became a shareholder in Cardiovascular Associates Ltd. ("CVAL") in 1986 by purchasing a 16.6% interest in the medical practice for $26,675. Over the years, several doctors entered and exited the medical practice, requiring husband to buy or sell his shares to accommodate the fluctuation in equity interests.

During their 23-year marriage, the Robbinses raised four children. In 1990, wife went back to school to obtain a master's degree in social work and, in 1995, began work as a licensed clinical social worker. She relied on *au pairs* to care for their children for about five years while training to be a social worker. The family lived in a waterfront home in Virginia Beach. During the marriage, the Robbinses accumulated more than $3.5 million in assets.

At wife's insistence, the parties separated in October 2000. She filed for divorce the following year. The circuit court referred the case to a commissioner in chancery in May 2002. After extensive discovery and evidentiary hearings, the commissioner filed his report to the circuit court in December 2003. The report found that wife's "romantic" relationship with a co-worker was "a major contributing factor and the precipitating event in her decision not to continue the marriage." The report also found that both wife and husband committed post-separation adultery. The commissioner, however, recommended a no-fault divorce under Code § 20-121.02.

The commissioner also suggested that the chancellor order a 65/35 split of marital assets in favor of husband. The commissioner determined the value of the marital home based upon an August 2002 appraisal. The report recommended a spousal support award of $2,800 per month to wife and a child support award of $1,389 to wife for the care of their only remaining minor child.

In circuit court, the parties agreed that the commissioner made a mathematical error in calculating wife's spousal support award. Husband argued that the matter be returned to the commissioner so that he may take additional evidence on the subject. Wife objected to a re-referral, arguing that the error could be corrected easily enough by the circuit court. Wife also asserted that, if the evidentiary record were reopened, she should be allowed to present evidence of the current value of the marital home — which, counsel proffered, had nearly doubled since the earlier 2002 appraisal.

In August 2004, the circuit court referred the case back to the commissioner for a "reconsideration of the issue of spousal support and all issues relating thereto." The circuit court left it for the commissioner to decide whether additional evidence concerning the home revaluation should be received. Wife objected to the court's decision on the ground that "if an evidentiary hearing is to be allowed, the commissioner should hear evidence as to the current value of the marital home which has greatly increased in value."

At the commissioner's hearing, wife again proffered that the marital home value had "increased in value substantially, close to a million dollars at this point." The commissioner, however, held that he had no discretion to receive additional evidence on the increase in value in the marital home. The law-of-the-case doctrine, the commissioner reasoned, precluded him from reexamining the value of the marital home.

After additional hearings, the commissioner issued a supplemental report in June 2005 that recalculated the spousal and child support awards. Both parties filed objections to the commissioner's report and contested the various other recommendations made by the commissioner to the circuit court. The circuit court denied all objections, accepted the commissioner's recommendations in full, and entered final judgment on August 30, 2005.

II.

A.  DATE OF VALUATION OF MARITAL HOME

Wife challenges the circuit court's use of a 2002 appraisal of the marital home in the face

of her proffer that the value had nearly doubled by the time of the final decree in 2005.  This type

of decision ordinarily involves a judgment call by the factfinder, one to which we defer absent an

abuse of discretion.  See Thomas v. Thomas, 40 Va. App. 639, 647, 580 S.E.2d 503, 506 (2003).

Even so, the circuit court's discretionary authority to revalue should be exercised in light of our

admonition that when a marital asset "subject to equitable distribution" is

> retained by one of the parties for a period of time after valuation but
> before the equitable division occurs and the asset significantly
> increases or decreases in value during that time through neither the
> efforts or fault of either party, neither party should disproportionately
> suffer the loss or benefit from the windfall.  Under those
> circumstances, a trial court abuses its discretion by failing to re-value
> the property when a party has made a timely motion to do so and is
> prepared to present evidence on the issue.

Rowe v. Rowe, 33 Va. App. 250, 264, 532 S.E.2d 908, 915 (2000); see also Holden v.

Holden, 35 Va. App. 315, 325, 544 S.E.2d 884, 888 (2001).

In this case, however, there was no exercise of discretion to which we can defer.  The

commissioner concluded, as a matter of law, that he could not address the issue because of

the law-of-the-case doctrine.  We disagree.  This doctrine precludes parties from relitigating,

after an appeal, matters that were either (i) not raised on appeal, but should have been, or

(ii) raised on appeal, but expressly rejected by the appellate court.  See generally Lockheed Info.

Mgmt. Systems Co. v. Maximus, Inc., 259 Va. 92, 108, 524 S.E.2d 420, 429 (2000).  The

law-of-the-case doctrine has no binding effect on a trial court prior to an appeal. [2]

_____

[2] Under the law-of-the-case doctrine, a party is not "entitled to relitigate unappealed
issues on remand."  Lockheed Info. Mgmt. Sys. Co., 259 Va. at 108, 524 S.E.2d at 429.  "Where
there have been two appeals in the case, between the same parties, and the facts are the same,
nothing decided on the first appeal can be re-examined on a second appeal.  Right or wrong, it is

In other words, a trial court may modify or rescind interlocutory orders "at any time before final judgment," Freezer v. Miller, 163 Va. 180, 197 n.2, 176 S.E. 159, 165 n.2 (1934) (citation omitted), and can, to put it plainly, "change its mind while the matter is still pending." Pinkard v. Pinkard, 12 Va. App. 848, 853, 407 S.E.2d 339, 342 (1991); see also Bennett v. Commonwealth, 33 Va. App. 335, 344, 533 S.E.2d 22, 27 (2000) (recognizing even after the entry of a final order "judges can change their minds" within the Rule 1:1 period). We have made just this point in the context of revaluations of assets subject to equitable distribution. See Rowe, 33 Va. App. at 265-66, 532 S.E.2d at 916.

All the more, the law-of-the-case doctrine does not govern the advisory relationship of a commissioner and chancellor. The commissioner does not make final, dispositive rulings subject to appellate review by the circuit court. The commissioner makes *recommendations* to the circuit court — the court alone must exercise the ultimate judicial function:

> When a court refers a cause to a commissioner in chancery, it does not delegate its judicial functions to the commissioner, and it is not bound by the commissioner's recommendations. Rather, the court must review the evidence, apply the correct principles of law, and make its own conclusions as to the appropriate relief required.

Morrill v. Morrill, 45 Va. App. 709, 714-15, 613 S.E.2d 821, 823 (2005) (*en banc*) (citations omitted). A commissioner serves only as "an officer appointed by the chancellor to aid him in the proper and expeditious performance of his duties." Raiford v. Raiford, 193 Va. 221, 226, 68 S.E.2d 888, 891 (1952). Given this relationship, the preclusive effect of the law-of-the-case doctrine plays no role.

---

binding on both the trial court and the appellate court, and is not subject to re-examination by either." Kaufman v. Kaufman, 12 Va. App. 1200, 1208, 409 S.E.2d 1, 6 (1991) (citations omitted). This rule has long been applied "where the question raised on the second appeal was necessarily involved in the first appeal, whether actually adjudicated or not." Searles' Adm'r v. Gordon's Adm'r, 156 Va. 289, 296, 157 S.E. 759, 761 (1931) (quoting Steinman v. Clinchfield Coal Corp., 121 Va. 611, 620, 93 S.E. 684, 687 (1917)).

An abuse of discretion occurs when a decisionmaker uses "an improper legal standard in exercising its discretionary function" because the decisionmaker "by definition abuses its discretion when it makes an error of law." Congdon v. Congdon, 40 Va. App. 255, 262, 578 S.E.2d 833, 836 (2003) (citations and internal quotation marks omitted); see also Owens v. Owens, 41 Va. App. 844, 853, 589 S.E.2d 488, 493 (2003). By relying on a legally inapplicable doctrine to preclude any consideration of the revaluation request, the commissioner abused his discretion. By not correcting this error, the circuit court did as well.[3]

We reverse the equitable distribution award and remand with instructions to revalue the marital home using "the most current and accurate information available which avoids inequitable results." Rowe, 33 Va. App. at 263, 532 S.E.2d at 915 (citation omitted); see also Holden, 35 Va. App. at 324-25, 544 S.E.2d at 888; Wagner v. Wagner, 16 Va. App. 529, 531-32, 431 S.E.2d 77, 78-79 (1993) (*en banc*).

### B. CLASSIFYING CVAL SHARES & TRACING SEPARATE INTEREST

Wife claims the commissioner erred in accepting husband's tracing argument and in classifying his shares in CVAL as hybrid property with a 93.16% separate interest. We agree.

At trial, husband claimed he used inherited funds in 1986 to pay off over $11,000 in purchase money debt owed to CVAL for the issuance of his initial shares. He had already contributed about $15,000 of marital funds towards the full purchase price, making the marital interest in his CVAL shares just under 60% and his separate interest just over 40%. As doctors

---

[3] The commissioner's report, adopted by the circuit court, mistakenly suggested that wife failed to make a sufficient proffer to warrant a value reconsideration. Without any objection by husband, wife's counsel made a unilateral avowal that the home had nearly doubled in value. Because the commissioner decided before the hearing that he would bar any further evidence on the subject of the home value, the circuit court denied wife's motion for permission for an appraiser to enter the property to conduct a new appraisal. Given these circumstances, wife can hardly be faulted for not making a more specific proffer than the one she made.

joined the practice, husband sold incremental interests to his new colleagues. Over the years, husband eventually sold more than half of his CVAL shares to accommodate new shareholders.

Treating *all* the sales of CVAL stock as marital, husband's expert concluded the remaining shares must be classified as 93.16% separate property — with the once predominate marital interest reduced to single digit status. The expert explained his reasoning this way:

> Dr. Robbins had advised me that every time he made a sale of a percentage of his interest that he put the money into one of these investment accounts. Whenever the money went into the investment account, I treated those as marital funds.

The expert admitted that he did not trace the funds from the CVAL stock sales to particular assets. Nor did he know when, whether, or on what the CVAL sale funds were ultimately spent. He also acknowledged that these investment accounts included deposits of marital as well as separate funds from sources other than the CVAL stock sales.

Multiple-source-multiple-destination tracing has been recognized by many courts. See 1 Brett R. Turner, Equitable Distribution of Property §§ 5:61-5:62, at 619-37 (3d ed. 2005). We too have found it a reliable method of tracing, so long as the evidence sufficiently supports its application. See, e.g., Holden v. Holden, 31 Va. App. 24, 520 S.E.2d 484 (1999); Rahbaran v. Rahbaran, 26 Va. App. 195, 208-10, 494 S.E.2d 135, 141-42 (1997). The conceptual weakness in this model, though, is its seemingly formulaic precision and its capacity to distract the decisionmaking process from first principles.

A spouse's separate property may be used to purchase other property during the marriage and, if "maintained" as separate property, will retain this status. Code § 20-107.3(A)(1)(iii). But with each new transaction comes the risk of transforming the once separate property into marital property. The whole point of tracing is to determine whether the owner of separate property has truly kept that property separate. This necessarily requires a focus on "contemporaneous intent," for the "the classification of the funds withdrawn depends upon the intent of the spouse who

made the withdrawal, determined as of the time the withdrawal was made." 1 Brett R. Turner, *supra* § 5:62, at 628-29.

Direct evidence can easily enough establish contemporaneous intent. But lacking that, as most cases do, courts turn to circumstantial evidence to reveal the separate owner's intent. The multiple-source-multiple-destination model provides a circumstantial framework to infer this intent. But if the circumstances cannot rationally support this inference, the model should be set aside as impermissibly speculative. "Whatever approach is used, it is clear that in the absence of sufficient evidence establishing the identity of separate funds throughout the multiple investments and withdrawals, the asset in question must be deemed marital." Barker v. Barker, 27 Va. App. 519, 533, 500 S.E.2d 240, 246 (1998).

In this case, the identity of the multiple sources of the CVAL shares (marital funds for the initial partial payment, separate inheritance funds to pay off the purchase money debt) arguably rests on a sufficient factual foundation. We need not resolve the multiple-source-funds dispute, however, because the identity of the multiple-destination funds has no evidentiary support.

As each new doctor came into the practice, husband sold a portion of his stock to cobble together with other shareholders the requisite number of shares for the newcomer. The purchase price for these shares went into various hybrid investment accounts. Husband offered no direct evidence of his intent to sell only marital, not separate, shares of CVAL. Nor did he provide, through his expert or otherwise, any circumstantial evidence of his contemporaneous intent to sell only marital CVAL shares and to leave his separate shares untouched by the various stockholder transactions. In short, the multiple-destination aspect of the tracing model collapsed because of the absence of any evidentiary basis to infer husband's intent to keep his separate CVAL shares forever separate.

Maybe so, husband argues, but at worst all this means is that the CVAL classification issue should be remanded solely for the mathematical imposition of the initial marital/separate

- 8 -

*pro rata* ratio on all later buy-sell transactions of the CVAL stock. Though some courts use this evidentiary shortcut, most do not. It has been justly described as "extremely difficult to apply, because the court must determine the size of the marital and separate interests at the time of each withdrawal. This determination poses a daunting administrative and mathematical burden, and it has not been often applied." 1 Brett R. Turner, *supra* § 5:62, at 636 (commenting on the *pro rata* model adopted by Lampton v. Lampton, 721 S.W.2d 736 (Ky. Ct. App. 1986)).

No Virginia court has expressly held that the deposit ratio may be arbitrarily used to approximate a *pro rata* withdrawal ratio. Nor do we. The multiple-source-multiple-destination model serves only to help identify circumstantial evidence of a spouse's intent to keep separate property truly separate. When a spouse commingles separate and marital funds in a single account created during the marriage, the spouse claiming a separate share must shoulder the burden of tracing. See Barker, 27 Va. App. at 531-32, 500 S.E.2d at 246. If he cannot do so, the account remains wholly marital.[4]

Proof of the separate classification of source funds may be straightforward enough. Proving the classification of withdrawn funds can be more difficult. It requires an examination of where the withdrawn funds went, when and why they were transferred, for what purpose they may have been ultimately used, as well as what contemporaneous financial records show about each. See generally 1 Brett R. Turner, *supra* § 5:62, at 629-37. In either context — while

---

[4] To adapt an analogy from a leading treatise, 1 Brett R. Turner, *supra* § 5:62, at 624, consider a jar filled with 100 marbles. Fifty red ones came from separate sources, the remaining blue ones from marital sources. Husband sells the red marbles and puts the sales proceeds into another wholly separate asset. The jar of marbles, now all blue, would then be a wholly marital asset with no remaining separate component. The inverse would be true if husband sold all the blue marbles and used the proceeds for marital expenses, leaving the jar of marbles (now all red) an entirely separate asset. But if he sold 50 marbles taken from the jar at random and used the proceeds for both marital and separate purposes, we would presume the worst (at least from his point of view): that the remaining 50 marbles are all blue, not one red, and each subject to equitable distribution as the entire jar of marbles has been transmuted into marital property.

classifying source funds or withdrawn funds — a failure of proof undermines any rational basis for tracing. Whether that occurs while tracing source funds or withdrawn funds, the result is the same. The *pro rata* withdrawal theory goes wrong because it seeks not to infer actual intent, but rather serves as a substitute for it.

We hold that husband's evidence failed to provide a rational basis for the commissioner to classify the pre-separation CVAL stock sales as wholly marital. The original CVAL shares had a source classification of about 60% marital, 40% separate. Husband sold more than half of these shares to incoming doctors. Husband's tracing evidence failed to prove that he intended to sell only marital shares.[5] To be sure, the evidence provides no basis to infer anything about husband's contemporaneous intent to sell marital shares, separate shares, or some combination of both. Consistent with the first principle of tracing, courts presume all assets acquired during marriage — absent proof to the contrary — remain marital property. Code § 20-107.3(A)(2). The commissioner erred in concluding otherwise.

For these reasons, we remand this issue to the circuit court with instructions to reclassify the pre-separation CVAL shares as marital property subject to equitable distribution.[6]

---

[5] Husband argues on appeal the marital presumption remedies his absence of proof on this issue. The reasoning goes along these lines: CVAL stock was sold; the purchase proceeds were deposited in hybrid investment accounts; the commissioner found tracing of these accounts impracticable and held them to be marital pursuant to the marital presumption; *thus*, the CVAL stock initially sold had to have been marital. Putting aside the *non sequitur* underlying this argument, it fails primarily because the "relevant issue is intent at the time of the withdrawal, not intent at the time of the divorce trial." 1 Brett R. Turner, *supra* § 5:62, at 629.

[6] Wife concedes 7.68% of husband's CVAL stock was purchased post separation and is separate property. This leaves 92.32% remaining for equitable distribution on remand.

## C. THE EQUITABLE DISTRIBUTION 65/35 DIVISION OF ASSETS

While recognizing our repeated statements that nothing in the equitable distribution statute presupposes a 50/50 presumption, wife argues that deviating from a 50/50 division in this case amounts to an abuse of discretion. We disagree.

Under settled principles, Virginia law "does not establish a presumption of equal distribution of marital assets." Watts v. Watts, 40 Va. App. 685, 702, 581 S.E.2d 224, 233 (2003) (citation omitted). A circuit court, therefore, need not start off at the 50-yard line and then look to the discretionary factors of Code § 20-107.3(E) to move the ball marker up or down the sidelines.[7] To follow such an approach would "undermine the legislature's recognition of 'marriage as a partnership to which each party contributes, *albeit not always equally,* to the well being of the family unit.'" Papuchis v. Papuchis, 2 Va. App. 130, 132, 341 S.E.2d 829, 831 (1986) (emphasis in original) (quoting Report of Joint Subcommittee Studying Section 20-107 of the Code of Virginia to the Governor and the General Assembly of Virginia, House Doc. No. 21, at 7 (1982) (expressly rejecting "any presumption in favor of an equal distribution of marital property")).

Instead, the circuit court must consider each of the § 20-107.3(E) statutory factors and only then determine what relative weight to assign to each. We provide *de novo* oversight of the first task, but highly deferential review of the second. "What weight, if any, to assign to this [or that] factor in the overall decision lies within the trial court's sound discretion. Under settled law, 'the trial court *must* consider each of the statutory factors, but *may* determine what weight to assign to each of them." Owens, 41 Va. App. at 859, 589 S.E.2d at 496 (citation omitted and emphasis in original).

---

[7] See generally 2 Brett R. Turner, *supra* § 8:2, at 771 (employing a similar analogy).

In this case, the circuit court adopted the commissioner's recommended 65/35 division of assets. The commissioner found that wife's romantic involvement with a co-worker was a "major contributing factor and the precipitating event in her decision not to continue the marriage," a permissible consideration under § 20-107.3(E) for equitable distribution purposes.[8] The report also noted that husband made most of the monetary contributions to the marital estate through his work as a cardiologist. The commissioner, however, did not limit himself only to these points. He specifically addressed each of the § 20-107.3(E) factors and expressly predicated his decision upon them.

Adopting the commissioner's recommendations, the circuit court made them its own. Satisfied that the factors have been conscientiously considered, we find no principled basis for wife's assertion that the circuit court abused its discretion. We have often "recognized that the trial court's job is a difficult one, and we rely heavily on the discretion of the trial judge in weighing the many considerations and circumstances that are presented in each case." Thomas, 40 Va. App. at 644, 580 S.E.2d at 505 (quoting Gilman v. Gilman, 32 Va. App. 104, 115, 526 S.E.2d 763, 768 (2000)). When dealing with discretionary decisions, only "when reasonable jurists could not differ can we say an abuse of discretion has occurred." Hernandez-Guerrero v. Commonwealth, 46 Va. App. 366, 370, 617 S.E.2d 410, 412 (2005) (citation omitted). That cannot be said here.

---

[8] As we have recently emphasized, "factors and circumstances leading to the dissolution of the marriage *may* be considered during equitable distribution — even if those factors have no financial impact on the marriage — as long as those factors detracted from the overall 'marital partnership.'" Ranney v. Ranney, 45 Va. App. 17, 46-47, 608 S.E.2d 485, 499 (2005) (emphasis in original and citations omitted); see also Budnick v. Budnick, 42 Va. App. 823, 595 S.E.2d 50 (2004); Watts v. Watts, 40 Va. App. 685, 581 S.E.2d 224 (2003).

- 12 -

We thus affirm the circuit court's use of a 65/35 division of assets for equitable distribution purposes, finding it consistent with the evidence and well within the scope of the court's discretionary authority.[9]

## D. CALCULATION OF SPOUSAL SUPPORT

Wife claims the circuit court abused its discretion in adopting the commissioner's recommended spousal support award because, in calculating the award, the commissioner deducted her child support award from her estimate of her financial needs. We agree.

Wife presented to the commissioner an expense report estimating her monthly needs. Included on the standard form were the costs for the mortgage, furniture, and utilities for the home; groceries and lunch bills; maintenance and fuel costs for two automobiles; health care costs; and other household expenses. The *pro forma* wife used to itemize her monthly expenses included no entries under the heading "Children in Household" or any costs for "Children's Expenses," such as child care, school tuition, lunch money, school supplies, lessons/sports, or new clothing.

In her testimony, however, wife admitted that the grocery expense line item ($800 a month) included food costs for herself, her minor son, and her adult brother. She also stated that the auto insurance cost covered a vehicle that she had given to one of her emancipated sons. The item "Health Expenses — Other," she added, included her costs for the purchase of medications and a "full health kit" for her minor son.

---

[9] Our opinion, however, does not preclude the circuit court from reexamining the division issue on remand. See, e.g., Gilman v. Gilman, 32 Va. App. 104, 123, 526 S.E.2d 763, 772 (2000) ("Because of our holding that a substantial amount of [husband's] separate property was mis-classified as marital property, the trial court will have to reconsider the division of the parties' marital property on remand."); cf. Hart v. Hart, 27 Va. App. 46, 69, 497 S.E.2d 496, 507 (1998) (directing the chancellor to classify certain property as separate and then to "redetermine how the balance shall be distributed in accordance with the subsection (E) factors").

In his first report, the commissioner found all of wife's proffered expenses "reasonable" except her estimated medical costs. Excluding the medical costs, the commissioner then calculated her "net monthly needs" in this manner:

> Hereinafter, at page 32, your Commissioner is recommending that the Husband pay to the Wife the sum of $1,389.00 per month in child support. When this amount is applied to her needs of $3,638.00 (see page 28 above), her net monthly needs then become $2,249.00.

Based on this calculation, the commissioner recommended a spousal support award of $2,800 which, after taxes, he estimated to "come close to making her monthly needs of $2,249.00."

Wife filed exceptions to the commissioner's report challenging, among other things, the deduction of the child support figure from her expense estimate. The circuit court did not rule on this subject, but instead referred the matter back to the commissioner. In his second report, the commissioner stated for the first time that he found it next to impossible "to determine what part of the Wife's claimed expenses are those of the minor child." So, the commissioner explained, his earlier calculation assumed the child support award served as a mathematical proxy for the portion of wife's expenses fairly attributable to the support of her minor son. The circuit court later explicitly "approved over Plaintiff's objection" the commissioner's "analysis for formulating the amount of spousal support," including the deduction of "child support that is received by the Plaintiff from the Defendant."

Wife contends the circuit court abused its discretion in accepting the commissioner's approach to calculating spousal support. We agree. Spousal support and child support represent two distinct remedies directed at two very different interests: the spouse's needs and the child's needs. Collapsing them together for purposes of an aggregate award misapprehends this distinction, Lambert v. Lambert, 10 Va. App. 623, 629, 395 S.E.2d 207, 210 (1990), and constitutes an abuse of discretion as a matter of law. Cf. Head v. Head, 24 Va. App. 166, 177-78, 480 S.E.2d 780, 786 (1997).

- 14 -

We acknowledge the commissioner's remonstrance that he did no such thing — that, instead, he merely recognized that a spousal support award should be based solely on a spouse's personal needs and should not duplicate the needs of her minor child for which child support will be provided. And we agree that, to the extent wife's claimed monthly financial needs included obligations fairly attributable to husband's support of their minor child, such overlapping expenses should have been excluded from the spousal support award.

That said, we nevertheless reject the commissioner's recommended solution to the problem of mixed expenses. A party seeking spousal support bears the burden of proving all facts necessary for an award, including evidence of financial need reasonably separate from the needs of others for whom the party paying support either owes no obligation or will be satisfying that obligation, if owed, by other means.[10] Applied here, the burden of proof required wife to persuade the factfinder of her own financial needs — a showing that necessarily included the burden of demonstrating that these expenses did not overlap with expenses attributable to the support of her minor son, a separate obligation of husband satisfied by his payment of child support.

In this context, the child support award cannot sensibly serve as a financial proxy for overlapping expenses. The child support award itself depends in part on the amount of spousal support awarded to the custodial parent. See Code § 20-108.2(C) (including spousal support as "gross income"). Under the child support guidelines, the spousal support award increases the gross income of the payee spouse and reduces the payor spouse's gross income. Id. It is from

---

[10] Expenses that are indivisible by nature or trivial in amount need not be segregated. While Code § 20-107.1(E)(1) requires the consideration of the "needs" of the "parties," the statute does not (as the child support statute does) create a mathematical formula primarily reliant on the input of financial data. Instead, § 20-107.1(E) requires only the factfinder to "consider" the estimated needs of the parties. By doing so, the statute thus authorizes a flexible, commonsense approach to this aspect of the factfinding exercise.

the disparity of these incomes that the guidelines allocate the child support obligation. The very use of the spousal support award as an income enhancement to the payee spouse recognizes the payee's own duty of support to her minor child.

For these reasons, we hold the circuit court abused its discretion in adopting the commissioner's method of determining wife's personal expenses for purposes of calculating her spousal support award. We reverse the spousal support award and remand this aspect of the case for reconsideration by the circuit court.[11]

### III.

In sum, we hold that the marital home should have been revalued, husband failed to prove a separate 93.16% interest in his CVAL shares, and the spousal support award should not have been calculated in the manner recommended by the commissioner. We find no merit, however, in wife's assertion of error regarding the unequal equitable distribution award. We thus affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.[12]

Affirmed in part, reversed in part, and remanded.

---

[11] Wife also argues that the commissioner miscalculated her future investment income by failing to take into account advances she made against her portion of the equitable distribution award. The commissioner, however, found that the evidence did not convincingly prove what use wife made of these advances, and thus, they could have been available for investment purposes. We find nothing in the record sufficient to overturn this factual finding. We similarly find no evidentiary grounds for wife's assertion that the commissioner "failed to consider Mrs. Robbins standard of living during and after the marriage." Having received ample evidence on this topic, the commissioner's report specifically considered wife's standard of living as required by Code § 20-107.1(E)(2). "What weight, if any, to assign to this [or any other] factor in the overall decision lies within the trial court's sound discretion." Owens, 41 Va. App. at 859, 589 S.E.2d at 496.

[12] We deny husband's request for attorney fees on appeal. See generally Petry v. Petry, 41 Va. App. 782, 796 n.7, 589 S.E.2d 458, 465 n.7 (2003); O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996).