UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:  Judges Petty, Alston and Senior Judge Felton
Argued at Alexandria, Virginia


DARREN GREGORY

MEMORANDUM OPINION[*] BY
v.      Record No. 1367-14-4          JUDGE ROSSIE D. ALSTON, JR.
                                        NOVEMBER 17, 2015

OLGA GREGORY


FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
Richard B. Potter, Judge

Amy N. Tobias (Stephens, Boatwright, Cooper, Coleman & Newton,
P.C., on brief), for appellant.

(Robert H. Klima; Robert H. Klima, P.C., on brief), for appellee.
Appellee submitting on brief.


Darren Gregory, husband, appeals the trial court's spousal support and equitable

distribution rulings as well as its award of attorney's fees to wife.  Husband raises six

assignments of error which can be summarized as follows:  (1) the trial court erred in awarding

wife spousal support because she failed to present any credible evidence of her employment or

her debt, (2) the trial court erred when it placed the burden on husband to prove wife's income

prior to making its spousal support determination, (3) the trial court erred when it failed to state a

basis for the award of all marital debt to husband while dividing husband's retirement account

equally, and (4) the trial court erred in its award of attorney's fees to wife because the trial court

failed to state a basis for the award and husband incurred substantial costs for wife's failure to

comply with the court's discovery orders.  We agree with husband as to the first assignment of

error and, therefore, reverse the trial court's decision and remand this case for a new trial.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Because this Court agrees with husband as to the first assignment of error, we will not address assignments of error two and three as these rulings necessarily flow from the trial court's initial determination.

## I. BACKGROUND

Husband and wife were married on February 10, 2004. They separated on July 31, 2012. Husband filed his complaint for divorce on June 6, 2013.

### A. PRETRIAL MOTIONS

Husband filed his first motion to overrule objections and compel discovery on October 4, 2013. Husband sought to compel amongst other things: (1) all tax return documents from 2008-12, (2) W-2, K-1, 1065, 1120, and 1099 forms, wage and income statements, and any other documents showing any indicia of wife's total income for the years 2008-12, (3) wife's pay statements, pay vouchers, pay stubs, commission statements, bonus statements, draw statements, statements reflecting retirement benefits accrued/received and any other documents relating to gross income, (4) wife's employment contracts, and (5) notes receivable or other evidence of debts incurred by wife.

Wife filed her response on November 1, 2013. In addition to her general objections, wife specifically objected on grounds that obtaining the documents requested would be unduly burdensome and that the documents themselves were irrelevant, duplicative or cumulative, or were outside of her custody and control.

On November 15, 2013, the trial court ordered wife to provide husband with the following: (1) all documents regarding the basis of her commission, (2) monthly bank statements for any and all bank accounts in which she made deposits, including where she deposited her income from Royal Group Limited ("Royal Group") from June 2010 through April 2013, and (3) all responsive documents contained on her computer.

On February 28, 2014, husband filed his second and third motions to compel discovery and for discovery sanctions. Husband sought among other things: (1) documents related to wife's ownership of Royal Group, (2) answers to interrogatories stating whether wife is or is not the owner of Royal Group, (3) documents or statements discussing the nature of wife's employment and compensation, (4) wife's bank account statements, as well as (5) documents related to Royal Group's ownership of property and/or real estate. Husband also sought $12,000 in attorney's fees as a result of wife's alleged failure to comply with his discovery requests or the trial court's first order compelling discovery.

On March 6, 2014, wife filed her response to husband's second and third motions to compel. Wife argued the following in response: (1) she could not produce credit card account statements prior to 2013 because no accounts existed prior to 2013, (2) documents related to her commission did not exist other than those she already produced, (3) wife opened a bank account on behalf of Royal Group and therefore, she did not have an individual ownership interest in the account, as such, she could not produce records related to that account, (4) that all documents on her computer were the property of Royal Group, the production of which would violate the rights of her employer and breach her non-disclosure agreement, and (5) wife did not own property in Russia.

The trial court ordered the following: "[Wife] shall identify and provide contact information of the person or persons responsible for paying her income to her to counsel for [husband] with[in] 7 days of this order. All other matters in these motions including Defendant's [appellant's] request for sanctions and fees and Plaintiff's request for fees are reserved for trial."[1]

---

[1] This order was entered by Judge Mary Grace O'Brien. She was subsequently appointed to the Virginia Court of Appeals and recused from this matter.

B. TRIAL EVIDENCE

The trial, which encompassed custody, child and spousal support, as well as equitable distribution, began on May 5, 2014, and concluded on May 6, 2014.[2]

Wife testified that she began working for Royal Group in 2002 as a "Logistics Account Manager." Wife stated that she worked from home and her job was to arrange shipping manifests and other documents required to transport cargo. Wife apparently entered into an "Employee Non-Disclosure Agreement"[3] and a "Telecommuting Agreement"[4] with Royal Group when she accepted the job. She stated that those were the only documents in her possession related to her employment with Royal Group.

According to wife, Royal Group is located in and has its corporate headquarters in Belize. Wife testified that she obtained the job through people she knew in Moscow, Russia;

---

[2] There was substantial testimony from the parties and their witnesses related to child custody. Because custody is not relevant to this appeal, the trial testimony discussed herein will be limited to that which addresses wife's employment with Royal Group and the alleged loans she received from Royal Group.

[3] The non-disclosure agreement between wife and Royal Group, specifically addressed trade secrets. It contained the following provisions: (1) confidentiality, (2) use, (3) enforcement, (4) termination, (5) ownership, (6) governing law, (7) indemnification, and (8) binding agreement. There were no provisions relating to compensation or the requirements and duties of her employment. The agreement was signed by wife and Oscar Sabido (Director).

[4] The telecommuting agreement is between wife and Royal Group. It states that the contract is valid from 9/10/2002 to 9/10/2017. Wife's work hours are "Per Diem." Wife will be compensated 33% of the gross amount received by the company from the customer for the complete and paid in full assignment but not later than ten days after receiving a payment from a customer. Wife is required to obtain written approval before taking leave. Wife is responsible for protecting company equipment from damage and unauthorized use. Wife's telecommuting location is subject to random inspection, and Royal Group is not liable for any damage to wife's property that results from her participation in the telecommuting program. Further, wife is to be reimbursed for operating costs, home maintenance, or any other incidental costs associated with the use of wife's residence. It also provides a section entitled work assignments which states that employees are to meet with clients to receive assignments and to review completed work as necessary. The agreement also contains provisions for employee evaluation, records, performance location, and attorney's fees. The agreement was signed by wife and Oscar Sabido (Director).

specifically, individuals by the names of "Julia" and "Alexander." However, wife did not know the last name of either of these individuals. She also did not know the names of the parties who hired her. Wife had visited Royal Group's headquarters in Moscow, but could not recall the address, the location[5] or how many people worked there. She initially identified a "Tatiana Ribakova" as her accountant. Wife later testified that Ms. Ribakova is the financial manager to whom she reports. She identified Oscar Sabado as the owner of Royal Group. However, wife stated that she never met Mr. Sabado and denied knowing that he is an attorney who incorporates offshore companies. Wife also testified that her brother worked for Royal Group and was her primary point of contact but when he passed away it became hard to operate the company.

Wife testified that telling husband the names of Royal Group's employees would violate her non-disclosure agreement. She admitted that her brother worked for Royal Group but stated that her disclosure of this information did not violate the non-disclosure agreement because husband already had this information. She further admitted that she did not speak with anyone at Royal Group regarding what she would be permitted to disclose during the divorce litigation. When asked who husband could contact at Royal Group, she referred husband to the P.O. Box in Belize where the company is registered.

Wife maintained that she does not own Royal Group and that her employment is per diem (i.e. commission based); she does not have set hours, but rather, works whenever there is a job. Wife also alleged the following: (1) once a shipment is complete she receives a "cash wire transfer" from Royal Group to her account,[6] (2) she receives earnings statements but those

---

[5] Wife testified that Royal Group's main office is in the "center of Moscow."

[6] Wife admits that she receives her wire transfers from a bank account that she opened for and on behalf of Royal Group.

documents have no information relating to the breakdown of her commission,[7] (3) she made

$26,100 from January 1, 2008, to December 31, 2008, $21,200 from January 1, 2009, to

December 31, 2009, and $16,200 from January 1, 2010, to December 31, 2010, (4) she currently

makes less than $2000 per month, and (5) she did not pay her taxes in 2010, 2011, 2012 or 2013

and owes back taxes for those years.[8] Wife later testified that she was not required to pay taxes

on her income for those years because she was not the owner of Royal Group. Lastly, wife

stated that she had not earned money from any other source other than Royal Group since 2008.

Wife admitted to previously working for a company called "Saving SRL or SK." She

admitted that this company is registered in Russia but denied being the 100% owner as was listed

on the corporate registration. Wife also admitted that she worked for a company called

"Yeardley" for several years prior to her employment with Royal Group. However, she denied

having started "Yeardley" in the 1990s. She further denied that "Yeardley" became Royal

Group in the early 2000s. She admitted that she still uses her "Yeardley" email despite working

---

[7] Wife's "earnings statements" provided the following information:

| COMPANY | | | EARNINGS STATEMENT | | |
|---|---|---|---|---|---|
| Royal Group Ltd., No5 New Road, P.O. Box 388, Belize City, Belize | | | | | |
| EMPLOYEE NAME | | | Pay Period | | Payment |
| Olga Oukolova (Gregory) * Darren Gregory | | | 01.01.2008 – 12.31.2008 | | Wire |
| Income | Per diem | Current total USD | Pay Date | | YTD USD |
| Gross wages | Payment according to the agreement with customers for every particular job assignment | 2,500.00 2,500.00 2,800.00 3,200.00 3,200.00 3,100.00 3,200.00 3,100.00 2,500.00 | 03.04.2008 04.08.2008 05.15.2008 06.05.2008 07.02.2008 08.01.2008 09.26.2008 11.04.2008 12.03.2008 | | 26,100.00 |

[8] Appellee claims that she attempted to file her taxes but that they were returned because her husband had already filed his taxes and included her social security number on his return.

for Royal Group. She also admitted that she did not know who the owners of Yeardley were or where such information could be found.

Wife further testified that she obtained several loans from Royal Group in the amount of $115,467.49 and that she needed the loans to pay her bills, which included living expenses, attorney's fees, and extracurricular activities.[9] Wife offered and the trial court admitted several purported promissory notes into evidence. Wife admitted that she prepared the promissory notes. She also entered a debt list identifying each loan she received. However, wife did not have promissory notes for all of the loans listed on her debt list. She testified that in order to obtain these loans she simply called Royal Group's accountant, sent the accountant the promissory note she drafted, and then had the accountant "wire money" to her bank account. Wife could not identify who the accountant gets approval from to issue the loan. She admitted that the promissory notes state that the debt must be paid within 30 days. When asked how she would pay the debt if demand was made by Royal Group, she stated that her father would sell his "country house" and pay that debt and she would later repay her father.

Husband testified that he works for INOVA Health full time and FRC Radiology Group part time. His average gross pay per month is $8,579 while his net pay is $5,603. Husband currently rents a townhouse located in Maryland. He does not receive any support for his three children but maintains all of their insurance. Further, he has a 401-K retirement account with INOVA Health valued at $39,923.23, which has a marital equity of $35,973.93.

Husband further testified that wife owns Royal Group. Husband stated that wife had never before mentioned an Oscar Sabado or Tatiana Ribakova and that she never discussed having a boss. According to husband, wife informed him that her brother worked for Royal

---

[9] Wife testified that she spends $2000 per month on rent and $680 per month on her son's music lessons.

Group and would bribe customs agents to get cargo shipped cheaper. Husband also testified that on her immigration forms, wife stated that she was self-employed because she owned her own business [i.e. Royal Group]. Further, husband maintained that approximately once a month wife would wire $3000 from her account into the parties' joint account. In addition, husband stated that he filed their tax returns but never knew what to claim for wife's income because he had no documentation reflecting her earnings. Finally, husband testified that he had never seen wife's statement of income.

## C. TRIAL COURT'S FINDINGS

The trial court found that both husband and wife had good educations and that husband had been working for INOVA Health for six years.

With respect to wife's employment, the trial court stated:

> let's be honest about it, we don't know much about her employer. At best, there's a lack of transparency here by the [wife]. Any employee who doesn't know the name of their supervisor isn't much of an employee. I agree with [husband's counsel], I don't know what their relationship is. While [husband] has not proven that [wife] is the owner of [Royal Group] she really hasn't disclosed anything to [husband] so that [he] can really argue as to what her income is.

The trial court went on to say:

> [e]ven if [wife is] accurate and Royal Group is a valid corporation in Belize, which makes it not transparent.[10] There's just something shady about the whole deal. She hasn't paid her income taxes in years. She's received income. She wants to argue that she makes $1576 a month, $18,912 a year as an average but she hasn't paid any income taxes to either the Commonwealth of Virginia or the federal government.

Wife admits to filing a tax return in 2005 but has not done so since. "Where's her W-2, where's her 1099 from her employers, where are the records, where are her bank statements?" Wife

---

[10] It was argued by husband that a corporation in Belize need not list the owner of the company in order to be registered to do business.

"presents some checks, arguing $115,000 in debts and promissory notes that are really self-serving notes, self-serving documents. No evidence of a bank deposit of any of those funds, no evidence of withdrawals of any bank account of any of those funds." "There is no documentation whatsoever to support those promissory notes, except they're self-serving documents." "This [c]ourt is not going to buy a fabricated note like that. Now the [wife] doesn't seek refund of that as marital debt but at the same time, she claimed she's had to borrow $115,000. It really lacks credibility."

The trial court ruled that it was "satisfied that [wife] makes $1576 because that's the only evidence [it] had; that's $18,912 a year." The trial court found that wife was voluntarily underemployed and that "there is a huge disparity between the incomes of the [husband] and the [wife]." Specifically, the trial court noted that husband makes $107,319 per year as compared to wife's $18,912 per year. The court further opined that there is a "big difference" between husband's and wife's future earning capacity. The trial court ruled that "in all likelihood [husband] will continue to make $107,000" whereas, wife "will struggle to increase her $18,000 to get to full-time employment."

The trial court concluded that wife's income was $1576 a month and ordered husband to pay wife $1000 per month in spousal support beginning on July 1, 2013. The trial court further ordered that husband pay the entirety of the $35,131 in marital debt and that husband and wife split the marital equity of husband's 401-K equally. The court further ordered husband to pay wife the sum of $5250 in attorney's fees. The trial court did not make a determination as to whether the monetary distributions alleged by wife were either gifts or loans and ordered that she pay the entirety of the alleged debts. This appeal followed.

II. ANALYSIS

A. The Trial Court Lacked Substantial Credible Evidence to Award Spousal Support to Wife

Husband contends that the trial court erred because in its findings of fact it found wife's evidence regarding her employment and alleged loans to be "shady," to "lack transparency," to include documents which were "self-serving" and "fabricated," and to "lack credibility," but awarded wife spousal support despite these findings and her failure to present credible evidence to meet her burden of proof for an award of spousal support. We agree.

This Court reviews an award of spousal support under an abuse of discretion standard. Moreno v. Moreno, 24 Va. App. 190, 194-95, 480 S.E.2d 792, 794 (1997). This Court will reverse a decision of the trial court only when its decision is plainly wrong or without evidence to support it. Id.; see also Northcutt v. Northcutt, 39 Va. App. 192, 196, 571 S.E.2d 912, 914 (2002). The trial court's findings must have some foundation based on the evidence presented. Joynes v. Payne, 36 Va. App. 401, 419, 551 S.E.2d 10, 19 (2001).

When determining whether to make an award of spousal support to a requesting party in a divorce, the trial court must consider the relative needs of the party seeking support and ability to pay of the other party. Joynes, 36 Va. App. at 419, 551 S.E.2d at 19. The party seeking an award of spousal support bears the burden proving all facts necessary for an award including his or her needs for support based on his or her obligations. Robbins v. Robbins, 48 Va. App. 466, 484, 632 S.E.2d 615, 624 (2006). Inherent in the analysis of inquiries such as these is that the trial court's findings must be supported by credible evidence. See Gibson v. Gibson, 5 Va. App. 426, 435, 364 S.E.2d 518, 523 (1988) (noting there must be "substantial credible evidence" related to the statutory factors in order to support an award of spousal support). "In determining whether credible evidence exists, the appellate court does not retry the facts, reweigh the

preponderance of the evidence, or make its own determination of the credibility of witnesses." Wagner Enterprises, Inc. v. Brooks, 12 Va. App. 890, 894, 407 S.E.2d 32, 35 (1991).

Here, the trial court made a clear and unmistakable credibility determination as to wife's evidence and testimony in support of her need for spousal support. Robbins, 48 Va. App. at 484, 632 S.E.2d at 624. Its findings were at best provocative and at worst damning. The trial court found that: (1) it could not determine the relationship between wife and Royal Group, (2) wife's testimony lacked transparency, (3) wife's evidence and testimony were "shady," and (4) wife's promissory notes were self-serving documents unsupported by the evidence. The death knell of wife's case was the trial court's finding that her promissory notes were "fabricated" and that her evidence and testimony "lacked credibility."

In support of its finding that wife's evidence and testimony lacked "transparency" and "credibility," the trial court noted that it was inconsistent for wife to claim she makes $18,912 a year, and yet fail to pay any taxes on her earnings. In a rhetorical statement, the trial court asked, "[w]here's her W-2, where's her 1099 from her employers, where are the records, where are her bank statements?" The trial court also found wife's testimony not credible because she could neither name her supervisor nor produce any evidence of a deposit or withdrawal of any of the funds allegedly loaned to her from Royal Group.

However, despite finding wife's evidence and testimony not credible, the trial court then discounted its own credibility determinations and concluded that wife makes $1576 per month. This was error. See Gibson, 5 Va. App. at 435, 364 S.E.2d at 523. The trial court made abundantly clear that its ruling was not based on credible evidence when it stated that it found that wife made $1576 per month but incongruously relied on this evidence because that was "the only evidence [it] had." A trial court cannot find the evidence and testimony not credible and

then rely on that non-credible evidence simply because that is the only evidence available to the trial court. Id. Such a position is inconsistent with our jurisprudence. Id.

Wife, as the party seeking spousal support, bore the burden of proof in establishing her need for spousal support. Robbins, 48 Va. App. at 484, 632 S.E.2d at 624. She failed to meet her burden because she did not introduce credible evidence at trial to prove her need. While this Court understands the trial court's utter frustration in trying to comb through the morass of wife's financial circumstances, having found wife's evidence not credible, it was an abuse of discretion for the trial court to then rely on that non-credible evidence in awarding spousal support to wife. Moreno, 24 Va. App. at 194-95, 480 S.E.2d at 794; see Gibson, 5 Va. App. at 435, 364 S.E.2d at 523.

Furthermore, the trial court's finding that there was a substantial disparity in income as well as future earning capacity, determinations that necessarily flow from the trial court's findings as to wife's income, were also in error. As stated above, the trial court's determination as to wife's income was based on non-credible evidence and thus, constituted error. Id. The trial court then relied on its unsupported factual determinations to justify a finding that wife was entitled to spousal support based on a substantial disparity in income and future earning capacity. Because the trial court's rulings on disparity of income and earning capacity flow from the trial court's determination of wife's income, we must find that it was also in error.

For the foregoing reasons, we reverse the trial court's decision and remand the case to be tried on the merits.

### B. The Trial Court Erred in Awarding Fees to Wife

Husband contends that the trial court should have awarded fees to the husband pursuant to Rule 4:12 for wife's failure to comply with the court's order relating to discovery. Specifically, wife's failure to turn over documents and information related to her employment with Royal

- 12 -

Group. Husband further argues that the trial court's award was improper because the trial court made its ruling based solely on the relative incomes of the parties and not all of the attendant circumstances. We agree.

Code § 20-99(6) states that in divorce cases, "[c]osts may be awarded to either party as equity and justice may require." "As used in this statute, the term 'costs' includes attorney's fees." Kotara v. Kotara, 55 Va. App. 705, 709, 688 S.E.2d 908, 910 (2010) (citing Tyszcenko v. Donatelli, 53 Va. App. 209, 222, 670 S.E.2d 49, 56 (2008)). "[A]n award of attorney's fees is a matter submitted to the trial court's sound discretion and is reviewable on appeal only for an abuse of discretion." Richardson v. Richardson, 30 Va. App. 341, 351, 516 S.E.2d 726, 731 (1999) (quoting Graves v. Graves, 4 Va. App. 326, 333, 357 S.E.2d 554, 558 (1987)). "[T]he key to a proper award of counsel fees [is] reasonableness under all the circumstances revealed by the record." McGinnis v. McGinnis, 1 Va. App. 272, 277, 338 S.E.2d 159, 162 (1985).

A party whose "conduct necessitates" a motion to compel discovery shall be responsible for the costs associated with that motion. Rule 4:12(a)(4). Likewise, any party who fails to comply with a trial court's discovery order shall be responsible for all costs associated with obtaining compliance. Rule 4:12(b)(2). The only exception to either rule is if the trial court finds the non-moving party's failure to comply to be "substantially justified" or that an award of fees to the moving party would be "unjust." Rule 4:12(a)(4); Rule 4:12(b)(2).

On November 15, 2013, in response to husband's October 4, 2013 motion to compel, wife was ordered by the trial court to provide husband with the following: (1) all documents regarding the basis of her commission, (2) monthly bank statements for any and all bank accounts in which she made deposits, including where she deposited her income from Royal Group from June 2010 through April 2013, and (3) all responsive documents contained on her computer. On March 6, 2014, in response to husband's February 28, 2014 second and third

- 13 -

motions to compel and for discovery sanctions, the trial court ordered wife to identify and provide contract information of the person or persons responsible for paying her income to husband's counsel and reserved all other discovery motions and the issue of sanctions for trial.

At trial, husband renewed his motion for sanctions arguing that he incurred $12,000 in attorney's fees as a result of wife's failure to comply with his discovery requests and the trial court's orders. In opposition, wife argued that she provided husband with all employment documents and information in her possession and that any other information sought by husband was either unknown, did not exist, was outside of her control, would breach her non-disclosure agreement or was irrelevant. The trial court awarded wife $5250 in attorney's fees, referencing wife's Exhibit 8, an attorney's fee affidavit setting forth lump sum amounts due to each law firm retained by wife at various points during the litigation. The trial court provided no further explanation.

The foundation of our analysis is based upon the uncontroverted finding that the trial court ruled in favor of husband on the discovery violations and entered orders on November 15, 2013, and March 6, 2014, compelling wife to comply with husband's discovery requests. Absent a lack of compliance by wife, no order to compel would have been entered by the trial court. Thus, it logically follows that wife's conduct necessitated husband's three motions to compel and therefore, husband was entitled to attorney's fees for those motions. Rule 4:12(a)(4). Additionally, implicit in the trial court's finding that wife failed to disclose any of the information sought by husband so that he could argue what her actual income was, is the trial court's finding that wife failed to comply with its discovery order. As such, husband was entitled to fees for obtaining compliance with the trial court's orders. Rule 4:12(b)(2). Moreover, the trial court did not find or rule that wife's opposition to husband's motion's to compel was "substantially justified" or that an award of fees to husband would have been

"unjust." Thus, neither of these exceptions applies nor negates wife's liability for the costs husband incurred in obtaining her compliance with discovery. Therefore, the trial court's failure to award husband attorney's fees was in error.

We now turn to husband's contention that the trial court erred in awarding wife attorney's fees based on its finding that there was a substantial disparity in income. Having already concluded that the trial court erred in finding a disparity in income based on wife's non-credible testimony and evidence, we find that any award of attorney's fees based upon that finding was also in error.

For the foregoing reasons, we find that the trial court erred in awarding fees to wife and thus, reverse and remand the trial court's decision.

III. CONCLUSION

We hold that the trial court erred in its award of spousal support and attorney's fees to wife, and therefore, we reverse and remand this case to the trial court.

Reversed and remanded.