COURT OF APPEALS OF VIRGINIA

**PUBLISHED**

Present:   Judges Humphreys, McCullough and Senior Judge Haley
Argued at Chesapeake, Virginia


PHILIP DECAMP

                                            OPINION BY

v.      Record No. 0860-14-1            JUDGE ROBERT J. HUMPHREYS
                                          DECEMBER 23, 2014

VIRGINIA DECAMP


FROM THE CIRCUIT COURT OF THE CITY OF WILLIAMSBURG
AND COUNTY OF JAMES CITY
William C. Wood, Judge *Pro Tempore*[1]

L. Steven Emmert (George A. Somerville; Sykes, Bourdon, Ahern &
Levy, P.C.; Troutman Sanders LLP, on briefs), for appellant.

Kenneth B. Murov (Hope C. Hutchinson; Law Office of Kenneth B.
Murov, on brief), for appellee.


Philip deCamp ("husband") appeals the order of the Circuit Court of the City of

Williamsburg and James City County (the "circuit court") with respect to its decision awarding

spousal support and attorney's fees to Virginia deCamp ("wife").  Husband asserts the following

six assignments of error in support of his appeal:  (1) the circuit court erred by including

expenses attributable to the parties' children in its award of spousal support to wife; (2) the

circuit court erred in declining to impute income to wife in determining her spousal support

award; (3) the circuit court erred in declining to impute income to wife no more than six months

after the entry of its initial order; (4) the circuit court erred in excluding expert testimony on

employment available to wife at the time of the hearing; (5) the circuit court abused its discretion

---

[1] See Code § 17.1-110.

by refusing to credit the testimony of expert witness Robert Hornsby; and (6) the circuit court erred in awarding attorney's fees to wife.

For the following reasons, we find no error in the judgment of the circuit court and affirm its decision.

## I. BACKGROUND

Husband and wife were married in 1990. When the parties married, husband was a Captain in the Army and wife was an Army nurse. The deCamps had three children—born in 1992, 1995, and 1999. After the birth of their first child, by mutual agreement of the parties, wife stopped working and became a homemaker and the children's primary caregiver. Wife has never had a full-time job outside the home after leaving the Army in 1992. During the course of the marriage, the deCamps moved eight times due to husband's military orders. In July of 2003, the family moved to Williamsburg, Virginia where husband became an adjunct professor of military science at the College of William and Mary. In 2005, husband retired from the Army as a Lieutenant Colonel.

Upon separation, the parties drafted a separation agreement dated January 18, 2013. Regarding the items on which the parties disagreed, they agreed to refer those issues to a Judge *pro tempore* for a decision based on Code § 20-107.3.

The circuit court found that because husband only made approximately $7,200 per year in his position as an adjunct professor, he was voluntarily underemployed and imputed $43,000 in annual income for spousal and child support determinations. At the time of the parties' separation, husband has several other sources of significant wealth. The circuit court found that based on husband's trust income, imputed trust income, imputed voluntary underemployment income, disability pay, and retirement pay, his gross monthly income for the purposes of calculating child and spousal support was $31,219. The circuit court refused to impute any

income to wife on the basis that husband failed to present any evidence of a present job and salary amount available to wife.

Having considered the statutory factors pursuant to Code § 20-107.1(E), the circuit court ordered husband to pay wife $7,000 per month, beginning on April 1, 2014 and continuing until either party dies or wife remarries or cohabits with another person for more than a year. At the parties' joint request, the circuit court awarded wife child support pursuant to the statutory guidelines in the amount of $734 per month.

## II. ANALYSIS

### A. Children's Expenses and Spousal Support Award

Husband first argues that the circuit court erred by "including expenses attributable to the parties' children in its award of spousal support to Wife, in addition to child support in the amount of $734 per month for the two minor children award pursuant to Code 20-108.2, and by failing to assign the burden of proof on that issue to Wife as the party seeking spousal support." Parsing out this compound assignment of error, we presume husband essentially argues that the circuit court's error is twofold: (1) it erred by failing to place the burden of proving separate spousal needs on the party seeking it, in this case wife; and (2) it erred again by failing to exclude the children's expenses from wife's spousal support award. In support of his argument, husband relies on this Court's decision in Robbins v. Robbins, 48 Va. App. 466, 632 S.E.2d 615 (2006), as setting forth the "controlling rules of law" applicable to this issue. Despite husband's arguments to the contrary, we find that the circuit court did not abuse its discretion under the current law as explained in Robbins.

In Robbins, the wife, the party seeking spousal support, argued that the circuit court abused its discretion by adopting the commissioner's method for calculating the wife's spousal support award—deducting her child support award from her estimated financial needs. The

commissioner based his reasoning on the fact that he could not determine what part of the wife's claimed expenses were attributable exclusively to the care of the minor child. Id. at 483, 632 S.E.2d at 624. In reversing the judgment of the circuit court, this Court explained that "[s]pousal support and child support represent two distinct remedies directed at two very different interests: the spouse's needs and the child's needs." Id. at 484, 632 S.E.2d at 624. Thus, collapsing the two awards together into an aggregate award "constitutes an abuse of discretion as a matter of law." Id. The party seeking spousal support pursuant to Code § 20-107.1 bears the burden of proving all the facts necessary for an award, "including evidence of financial need reasonably separate from the needs of others from whom the party paying support either owes no obligation or will be satisfying that obligation, if owed, by other means."[2] Id. However, this Court explained in dicta that,

> Expenses that are *indivisible by nature* or trivial in amount *need not be segregated*. While Code § 20-107.1(E)(1) requires the consideration of the "needs" of the "parties," the statute does not (as the child support statute does) create a mathematical formula primarily reliant on the input of financial data. Instead, § 20-107.1(E) requires only the factfinder to "consider" the estimated needs of the parties. By doing so, the statute thus authorizes a flexible, commonsense approach to this aspect of the factfinding exercise.

Id. at 484 n.10, 632 S.E.2d at 624 n.10 (emphasis added).

In this case, unlike in Robbins, the circuit court did not improperly relieve wife of her burden of proving her separate financial need, nor did it collapse husband's spousal and child support obligations into an aggregate award.

---

[2] The Court supported this conclusion by pointing to the fact that child support obligations calculated according to the statutory guidelines already contemplate the amount of spousal support awarded to the custodial parent. In other words, "[t]he very use of the spousal support award as an income enhancement to the payee spouse recognizes the payee's own duty of support to her minor child." Robbins, 48 Va. App. at 485, 632 S.E.2d at 624.

- 4 -

This Court held that the wife in Robbins had the burden of proving her own financial needs separate from those expenses attributable to the support of the parties' minor child—which was a separate obligation of the husband satisfied through his child support payments. Id. at 484-85, 632 S.E.2d at 624. The wife conceded that some of her listed expenses included some items attributable exclusively to the children. This case is factually distinguishable from Robbins because wife only purported to claim her individual monthly expenses. Throughout the course of the proceedings, wife submitted several revised income and expense statements. One draft listed $9,991.24 as her individual monthly expenses and $680 under the section titled "Children Expenses." However, her last draft, dated August 26, 2013, listed $8,160.76 as her individual monthly expenses and included nothing under "Children Expenses." When asked under oath why she had shown no expenses under the "Children Expenses" category in her final draft, wife responded that in "[d]oing this new income and expense statement I was advised by [counsel] that those are children's expenses and not my expenses so they should not be included."

Because wife's estimated expense statement facially included only those expenses attributable to herself, wife met her burden of proffering evidence that supported her individual monthly expenses. Therefore, as the factfinder, the circuit court was then free to consider and weigh the evidence of her estimated needs, and award spousal support within its discretion.

In applying that discretion, the circuit court concluded that some of wife's claimed expenses did indeed include expenses attributable to the children such as Internet service fees, utilities, and food, however those expenses were either indivisible by their nature as noted in the dicta in Robbins or were reduced by the circuit court to exclude what the circuit court considered non-spousal expenses. In explaining its ruling, the circuit court specifically found that both husband and wife "included costs in some of their monthly expenses which are attributable to the

- 5 -

children," however "such costs were not subject to calculation." The circuit court further noted that it was "not aware, nor have the parties suggested any method through which a spouse could calculate a child's use of electricity, gas/heating oil, water/sewer, and auto repairs." As to some of wife's other claimed expenses, the circuit court adjusted those expenses that were subject to divisibility on the basis that they were exaggerated or included the needs of her children. For example, the circuit court reduced her estimated monthly grocery and dining out expenditures because it believed "Wife included her individual needs [with] the food needs of her children."

In sum, the circuit court acknowledged, echoing the dicta language in Robbins, that there are some monthly expenses that are indivisible by their very nature. Finding no error in the circuit court's judgment, we expressly adopt as our holding here the dicta in Robbins that "[e]xpenses that are indivisible by nature or trivial in amount need not be segregated." Id. at 484 n.10, 632 S.E.2d at 624 n.10. With respect to any divisible expenses, the record here reflects that the circuit court properly *considered* the estimated needs of wife and reduced her claimed individual expenses where it believed the children's expenses had been included in her estimations. Therefore, the circuit court did not abuse its discretion by failing to award a separate and distinct spousal support award that did not include the needs of the parties' children.

B. Expert Testimony of Gray Broughton

Husband argues that the circuit court abused its discretion by excluding the expert testimony of Gray Broughton ("Broughton"), which supplemented his earlier report on current nursing jobs available to wife. This Court will not overturn a circuit court's exercise of its discretion in determining whether to admit or exclude evidence unless the record demonstrates that it abused its discretion. Hinkley v. Koehler, 269 Va. 82, 91, 606 S.E.2d 803, 808 (2005).

Broughton's initial report, dated July 10, 2013, included an evaluation of wife's employment potential as a nurse, considering her education, experience, age, physical and mental

limitations, and the current job market. Broughton included in his report eight potential nursing positions he believed suitable for wife. This report was disclosed to wife's counsel in accordance with the pretrial scheduling order. The pretrial scheduling order required that the parties complete discovery 30 days before trial. It also required that counsel exchange a list and copies of all exhibits that were going to be introduced 15 days before trial. Trial was estimated by the parties to last two days and was set for September 11 and 12, 2013.

The trial began as scheduled on September 11, 2013. Wife presented her evidence for the full two days estimated for the entire trial. Due to a scheduling issue, the circuit court set the trial to reconvene on October 17 and 18, 2013 for the presentation of husband's evidence. On September 27, 2013, husband provided wife with an updated copy of Broughton's report, listing fifteen new job opportunities suitable for wife. On October 17, 2013, when Broughton was called to testify about his findings in the September 27th report, wife's counsel objected on the grounds that the amended report violated the scheduling order. Broughton conceded that he had done research on the current job market after the start of the trial on September 11, 2013.

The circuit court found that "it would be grossly inappropriate . . . to allow him to testify any differently than he would have testified had he been called on one of the days that we had set for trial." Consequently, the judge prohibited Broughton from testifying "to anything he had not yet prepared prior to September 11th and 12th." However, the judge noted that on the issue of whether the information provided was "stale" he would look at it "as if it was tried all at the same time." During the hearing on husband's motion to reconsider, the judge reiterated that "I want the record to state that one of the reasons that the, that 15 of those jobs were not allowed is that they were, in my opinion, in violation of the pretrial order."[3]

---

[3] Wife asserts that husband's argument was not properly preserved because he never proffered the disputed September 26, 2013 report. Wife is correct that an aggrieved party must make a proffer of the excluded testimony to preserve a ruling for appellate review. See Galumbeck v. Lopez, 283 Va. 500, 507, 722 S.E.2d 551, 555 (2012) ("'We will not consider

The circuit court did not abuse its discretion by excluding Broughton's report and testimony on the information he obtained after the start of the trial—September 11, 2013. Husband submitted the information to opposing counsel 15 days before Broughton's *testimony* but he failed to comply with the circuit court's pretrial scheduling order because he failed to provide it to counsel 15 days before *trial*. The purpose behind discovery rules is to eliminate "surprise at trial" by "'disclos[ing] all relevant and material evidence before trial in order that the trial may be an effective method for arriving at the truth and not a battle of wits between counsel.'" Little v. Cooke, 274 Va. 697, 717, 652 S.E.2d 129, 141 (2007) (quoting Guilford Nat'l Bank of Greensboro v. S. R. Co., 297 F.2d 921, 924 (4th Cir. 1962)). Here, wife had already fully presented her case based upon the evidence available to both parties at the time the trial commenced on September 11, 2013. The circuit court concluded and we agree that it would have been fundamentally unfair to allow husband to offer evidence that wife was wholly unaware of until after she had rested her case. Accordingly, the circuit court did not abuse its discretion by excluding Broughton's testimony.

### C. Imputed Income to Wife

In his second and third assignments of error husband argues that the circuit court abused its discretion by refusing to impute income to wife for the purposes of calculating her spousal support award both in its initial ruling and in denying husband's motion for reconsideration requesting a delayed imputation of income within six months of the initial order.

Code § 20-107.1 grants circuit courts the discretion to award spousal support—including fixing the amount and duration. In determining the appropriate award, Code § 20-107.1(E)

---

testimony which the trial court has excluded without a proper showing of *what that testimony might have been*.'" (quoting O'Dell v. Commonwealth, 234 Va. 672, 697, 364 S.E.2d 491, 505 (1988) (emphasis added))). However, the record here is clear as to what new information was part of Broughton's supplemental report—15 new job opportunities he considered suitable for wife. In fact, wife's trial and appellate counsel, stated at trial: "And for this to come in, and *I'll just proffer*, 15 new jobs in the September report. It's not fair."

- 8 -

requires the circuit court to consider twelve specific statutory factors as well as any other concern necessary to consider the equities between the parties. Stubblebine v. Stubblebine, 22 Va. App. 703, 707, 473 S.E.2d 72, 74 (1996). "'A court may under appropriate circumstances impute income to a party seeking spousal support.'" McKee v. McKee, 52 Va. App. 482, 489, 664 S.E.2d 505, 509 (2008) (en banc) (quoting Srinivasan v. Srinivasan, 10 Va. App. 728, 734, 396 S.E.2d 675, 679 (1990)). "'The decision to impute income is within the sound discretion of the trial court and its refusal to impute income will not be reversed unless plainly wrong or unsupported by the evidence.'" Id. (quoting Blackburn v. Michael, 30 Va. App. 95, 102, 515 S.E.2d 780, 784 (1999)).

"Whether to impute income to a spouse seeking support is simply one component of calculating the 'amount' of support under the statutory factors listed in Code § 20-107.1(E)." Brandau v. Brandau, 52 Va. App. 632, 638, 666 S.E.2d 532, 535 (2008). Three of the statutory factors are directly pertinent to the question of imputation: "'earning capacity, including the skills, education and training of the parties and the present employment opportunities for persons possessing such earning capacity;'" "'opportunity for, ability of, and the time and costs involved for a party to acquire the appropriate education, training and employment to obtain the skills needed to enhance his or her earning ability;'" and "'decisions regarding employment, career, economics, education and parenting arrangements made by the parties during the marriage and their effect on present and future earning potential, including the length of time one or both of the parties have been absent from the job market.'" Id. at 638, 666 S.E.2d at 536 (quoting Code § 20-107.1(E)(9), (10), (11)). However, "these [three] specific factors do not render the more general factors inconsequential." Id. "Whether to impute income also depends, in part, on a conscientious consideration of *all* factors, including the 'standard of living established during the marriage,' the 'duration of the marriage,' and the positive and negative 'contributions, monetary

- 9 -

and nonmonetary, of each party to the well-being of the family.'" Id. at 638-39, 666 S.E.2d at 536 (emphasis added) (quoting Code § 20-107.1(E)(2), (3), (6)).

The party seeking imputation has the burden of proving that their spouse was voluntarily forgoing employment and "is required to present evidence 'sufficient to enable the trial judge reasonably to project what amount [of income] could be anticipated.'" McKee, 52 Va. App. at 490, 664 S.E.2d at 510 (alteration in original) (quoting Joynes v. Payne, 36 Va. App. 401, 421, 551 S.E.2d 10, 20 (2001)). "In determining whether to impute income, the circuit court 'must look to current circumstances and what the circumstances will be within the immediate or reasonably foreseeable future, *not* to what *may* happen in the future.'" Id. at 490, 664 S.E.2d at 509 (emphasis added) (quoting Srinivasan, 10 Va. App. at 735, 396 S.E.2d at 679).

Generally, "one who seeks spousal support is obligated to earn as much as he or she reasonably can to reduce the amount of the support need." Srinivasan, 10 Va. App. at 734, 396 S.E.2d at 679. However, so long as the spouse seeking support has not "unreasonably refused to accept employment," the spouse is "entitled to a reasonable time to secure employment." Id. In Brandau, this Court affirmatively rejected the proposition that there is a statutory preset requiring the imputation of income to a spouse seeking support if she has provable earning capacity at the time of divorce. 52 Va. App. at 639, 666 S.E.2d at 536. In fact, this Court noted that "[n]either Srinivasan nor any other Virginia case has held that, for purposes of calculating spousal support, a stay-at-home spouse capable of working must go to work immediately after the divorce trial or face a judicially imposed imputation of income." Id. at 640, 666 S.E.2d at 536. To the contrary, Virginia cases imputing income "involved spouses who worked during the marriage but, sometime after separation, either accepted a job beneath their earning capacity or stopped working altogether." Id. In Brandau, this Court affirmed the circuit court's refusal to impute income to the wife because there were credible reasons to support its determination that

imputation was inappropriate in light of the conditions that existed at the time of the final decree. Id. at 641, 666 S.E.2d at 537.

In this case, husband argues that the trial court erred in refusing to impute income to wife because she is voluntarily unemployed. Specifically, he argues that the circuit court's decision to decline to impute income to wife because husband failed to introduce evidence of jobs that were currently available to wife was in error because: (1) the circuit court's exclusion of Broughton's testimony made that task impossible; and (2) there was undisputed evidence in the record that the demand for nursing jobs was rising and jobs become available on a daily, weekly, and monthly basis.

Wife had not worked full time outside the home since 1992. Wife did briefly work part time as a substitute school nurse in late 2011 and early 2012 as well as an assistant soccer coach in 2011. In 1996, she had back surgery that has had a significant impact on her physical mobility. Medical experts testified that the kind of employment she could perform was limited due to the physical tasks required for many nursing jobs. Broughton testified as to eight positions which he opined were "reasonable in distance from Wife's home and would accommodate her physical limitations." However, Broughton conceded that to his knowledge none of those jobs were still available. The circuit court found that it was "constrained to find that Husband has failed to offer any evidence of a present job position for Wife," because Broughton "could not testify as to any jobs which were available."

In this case, the circuit court did not abuse its discretion in declining to impute income to wife. As the party seeking to impute income, husband had the burden of proving that wife was voluntarily forgoing employment. He was "required to present evidence 'sufficient to enable the trial judge reasonably to project what amount [of income] could be anticipated.'" McKee, 52 Va. App. at 490, 664 S.E.2d at 510 (quoting Joynes, 36 Va. App. at 421, 551 S.E.2d at 20). The

- 11 -

circuit court found that he failed to do so. Husband presented one expert witness, and the circuit court found that witness' testimony was insufficient to establish at the time of divorce what jobs were available to her and what income she could potentially earn.[4]

In analyzing husband's assignments of error in this regard, we initially note that the law does not *require* wife return to work immediately upon divorce to avoid judicial imputation of income merely because she has provable earning capacity at the time of the divorce. Brandau, 52 Va. App. at 639, 666 S.E.2d at 536. Rather, any decision to impute income must be done within a review of *all* the statutory factors concerning spousal support. In determining wife's spousal support award the circuit court wrote an exhaustive report detailing consideration of all relevant factors as required pursuant to Code § 20-107.1(E). Husband had significant financial resources. He was the sole monetary contributor to the marriage for its entire duration. By mutual agreement of the parties, wife left her nursing career in 1992 and became a full-time homemaker and caregiver to their three children. Over the course of their twenty-one-year marriage, wife moved eight times with husband due to his military career. The circuit court found that wife's nonmonetary contribution allowed husband to pursue and advance in his military career.

In sum, based on the evidence before the circuit court, we cannot find that the circuit court abused its discretion by declining to impute income to wife because there are credible reasons in the record to support its determination that imputation was inappropriate in light of the conditions that existed at the time of the final decree.

---

[4] The circuit court noted that it did not find that wife should not go to work at some point or that she was not capable of finding employment. Rather, the circuit court stated at the hearing on husband's motion to reconsider that the issue was that husband's expert failed to provide a potential income that the court could impute to wife.

Husband's third assignment of error contends that the circuit court erred by failing to impute delayed income to wife no more than six months after the entry of its initial order. Less than thirty days after the entry of the final decree, husband filed a motion for reconsideration requesting that the circuit court impute income to wife in the amount equal to halfway between Broughton's highest and lowest estimated salaries, effective no more than six months after entry of the circuit court's order. In his motion, husband argued that "[s]ix months is a more than reasonable time for a person with Wife's qualifications to secure full-time employment in the Peninsula market."

The circuit court did not abuse its discretion in denying husband's request for delayed imputation of income for the same reasons as stated above. In support of his motion husband presented no additional evidence, therefore the circuit court's determination was identical to its initial determination. The circuit court reiterated its finding that Broughton did not give "the necessary testimony to establish a job that was available or the amount of money that she could earn in that job."

### D. Expert Testimony of Robert Hornsby

Husband argues that the circuit court abused its discretion in refusing to credit the testimony of Robert Hornsby ("Hornsby"), a qualified expert in real estate sales in Williamsburg, Virginia regarding the availability and cost of housing for wife. Hornsby testified that his task was to find a home that would be appropriate for wife considering her "stature in the community" within a price range of $205,000 to $325,000. Hornsby stated that husband provided all his search parameters including price, square footage, and number of bedrooms and bathrooms.

Citing John v. Im, 263 Va. 315, 559 S.E.2d 694 (2002), the circuit court declined to give any weight to Hornsby's testimony. The Supreme Court in John explained that "expert

testimony generally is admissible if it will assist the trier of fact in understanding the evidence. Id. at 319, 559 S.E.2d at 696. "The decision whether to admit such testimony is a matter committed to the trial judge's sound discretion," and will be reversed "only when the court has abused its discretion." Id. at 320, 559 S.E.2d at 696.

Here, the testimony was admitted into evidence unobjected to, however the circuit court refused to give it any weight for the same reasons it could have excluded the testimony to begin with—because it had no probative value. The circuit court found that the facts testified to by Hornsby originated solely from husband and were not based upon any facts established by the other evidence in the record or the statutory considerations. Specifically, the value of wife's prospective home was an ultimate issue in this case and that issue was dependent upon husband's ability to pay, the standard of living established during the marriage, and all the factors set forth in Code § 20-107.1(E). The circuit court found that Hornsby's conclusions, based upon parameters provided by husband, did not assist it in understanding testimony or determining any factual issue and therefore it declined to give any weight to his testimony in making its determination. The "credibility of the expert witness and the weight to be accorded the evidence" is a matter exclusively in the province of the factfinder, in this case the circuit court, and is not ordinarily subject to appellate review. See Lemond v. Commonwealth, 19 Va. App. 687, 694, 454 S.E.2d 31, 35 (1995). Consequently, the circuit court did not abuse its discretion in refusing to give any weight to Hornsby's testimony.

### E. Attorney's Fees

Husband's final assignment of error is that the circuit court abused its discretion in awarding wife $50,000 in attorney's fees. Husband simply argues that because the circuit court's award of attorney's fees was based on its finding that wife substantially prevailed in the litigation by obtaining a spousal support award, if this Court reverses the judgment below then it should

direct the circuit court to revisit its award of attorney's fees. Because we find no error in the judgment of the circuit court, we need not consider this issue further.

Wife asks this Court to award her attorney's fees necessary for the defense of this appeal. We grant wife's request in part.

> "The rationale for the appellate court being the proper forum to determine the propriety of an award of attorney's fees for efforts expended on appeal is clear. The appellate court has the opportunity to view the record in its entirety and determine whether the appeal is frivolous or whether other reasons exist for requiring additional payment."

Brandau, 52 Va. App. at 642, 666 S.E.2d at 537-38 (quoting O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996)). With respect to husband's second through sixth assignments of error, we conclude that those arguments are "not fairly debatable under any reasonable construction of the record or the governing legal principles." Id. at 642, 666 S.E.2d at 538. However, we conclude that husband's first assignment of error though ultimately unpersuasive, was nonetheless fairly debatable. See id. at 643, 666 S.E.2d at 538. Therefore, we remand this case to the circuit court solely for the purpose of determining appropriate appellate attorney's fees and costs associated with her defense of this appeal with the exception of those related to husband's first assignment of error.

### III. CONCLUSION

For the reasons stated above, we affirm the judgment of the circuit court as to all issues on appeal and remand solely for a determination of an appropriate award of attorney's fees and costs related to this appeal.

Affirmed and remanded.