UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys, Decker and O'Brien
Argued at Richmond, Virginia

GEORGE M. GORDON

MEMORANDUM OPINION[*] BY
v.       Record No. 2038-16-2          JUDGE MARLA GRAFF DECKER
JULY 11, 2017

ELIZABETH H. GORDON

FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
Christopher J. Habenicht, Judge Pro Tempore[1]

Joseph E. Blackburn, Jr. (Blackburn, Conte, Schilling & Click, P.C.,
on briefs), for appellant.

Charles E. Powers (Batzli Stiles Butler, PC, on brief), for appellee.

George M. Gordon (the husband) appeals a final order of the circuit court awarding

Elizabeth H. Gordon (the wife) $12,000 a month in spousal support.  For the reasons that follow,

we affirm the circuit court's decision.  Additionally, we deny the wife's request for attorney's

fees and costs incurred on appeal.

I.  BACKGROUND

The parties married on September 7, 1985, and had one child.  They separated after

approximately twenty-seven years of marriage.  At the hearing on equitable distribution and

spousal support, the circuit court heard testimony from the husband, the wife, and several other

witnesses regarding the parties' respective incomes and expenses.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] The judge pro tempore acted with the "same power and authority" as the circuit court.
See Code § 17.1-110.

The husband earned a lucrative income as a financial advisor. In the year before the hearing, he earned $623,346 from his employment. In the six previous years, his employment income ranged from $366,431 to $898,549.

After the parties married, the wife stopped working outside the home in order to take care of their child. She worked seasonally as a part-time school volleyball coach, but the record does not establish her income from that position or even that it was a paid position. The wife testified that she was learning ballroom dancing in the hope of teaching dance and earning $20 an hour.

Peder Melberg, a vocational expert, opined that the wife's annual earning capacity was approximately $24,000 to $29,000. He acknowledged that her skills from her previous employment as a technical illustrator were obsolete, but he opined that her extensive volunteer work was "valuable." Melberg testified that at the time he interviewed the wife, she had been hired on a "project-basis" at $18 per hour. He believed that she was employable as a retail clerk or member services representative.

Garrett Wirwille, a financial advisor, also testified as an expert. He was hired by the husband to calculate the wife's income "based on certain assumptions as to what she might get by way of equitable distribution." Wirwille estimated that if the wife received $1.5 million in equitable distribution assets, she could expect to withdraw $65,000 annually, after taxes. He opined that if she withdrew $65,000 annually, the wife's savings would be entirely depleted if and when she reached age ninety-five. Wirwille explained that his calculation was based on recommended investments. He acknowledged that he could not account for the cost basis of any assets that the wife would receive in equitable distribution and that factor could change the calculation.

Keith Muth, a certified public accountant, testified as an expert witness on the wife's behalf. He calculated that if she received $15,000 monthly spousal support, she would pay

$4,678 of that for income tax. Muth testified that the wife's taxes on a lower amount of support could be extrapolated from his calculations.

The parties' primary investment account earned $96,369 in total income in 2015. The parties agreed that during their marriage, their standard of living was relatively modest. They and their child lived on approximately $9,000 per month. The husband contended that the wife's monthly expenses were $5,867 at the time of the hearing. In contrast, the wife represented that her monthly expenses were $28,578. She explained that her calculation included home improvements, a new car, expert witness fees, and half of their son's college costs.

In the final divorce decree, the circuit court valued the marital assets at approximately $4.5 million and ordered that they be divided equally between the parties. It awarded the wife $12,000 a month in spousal support and $35,000 in attorney's fees and costs incurred in the matter.

In determining the cause of the dissolution of the marriage, the court ultimately decided that the husband's adultery was not the primary cause of the marriage's breakdown. However, it considered the husband's adultery to be "significant." The court concluded that although the husband made the vast majority of the monetary contributions to the family, the wife "enabled those monetary contributions to grow into significant amounts by remaining home to take care of the parties' child and by willingly living a modest life-style when the parties had sufficient income to have lived a more extravagant lifestyle." It noted that the husband "admittedly has the ability to pay whatever amount" that it decided to award in spousal support.

The court did not impute any employment income to the wife due to her long and mutually-agreed-upon absence from the workforce and her unsuccessful efforts to find meaningful employment after the parties' separation. However, it noted Melberg's testimony about the wife's earning capacity as well as Wirwille's testimony that she could reasonably

expect to withdraw $65,000 annually from her assets. The court wrote that it had "two problems" with Wirwille's calculation:

> First, at some point [the wife] will be dissipating her assets. If she lived long enough, she would run out of money. Second, the same is true for [the husband]. The division of marital assets is a wash. Forcing [the wife] to live off of her assets while [the husband's] assets are allowed to accumulate does not seem equitable.

## II. ANALYSIS

The husband asks this Court to reverse the portion of the divorce decree awarding spousal support. He makes five separate challenges to the amount of the award of spousal support. The husband argues that the circuit court: (1) improperly did not consider the wife's equitable distribution assets; (2) erred by failing to impute income to the wife; (3) erroneously found that he agreed that he could pay any amount of spousal support; (4) made an award that was excessively high in light of the court's findings regarding the wife's expenses; and (5) erroneously relied on Muth's expert testimony about the wife's tax obligations. The wife disputes all of these allegations and asks for an award of attorney's fees and costs associated with this appeal.

## A. Spousal Support

This Court reviews an award of spousal support for an abuse of discretion. Fox v. Fox, 61 Va. App. 185, 203, 734 S.E.2d 662, 671 (2012). Our standard for determining "error is a showing that the court's exercise of its broad discretion was '"plainly wrong or without evidence to support it."'" Robinson v. Robinson, 54 Va. App. 87, 92, 675 S.E.2d 873, 875 (2009) (quoting Northcutt v. Northcutt, 39 Va. App. 192, 196, 571 S.E.2d 912, 914 (2002)). Stated another way, the circuit court's "findings 'must have some foundation based on the evidence presented.'" Fox, 61 Va. App. at 203, 734 S.E.2d at 671 (quoting Woolley v. Woolley, 3 Va. App. 337, 345, 349 S.E.2d 422, 426 (1986)). The wife, as the party who sought spousal

support, bore the burden in the circuit court "of proving all facts necessary for an award." Robbins v. Robbins, 48 Va. App. 466, 484, 632 S.E.2d 615, 624 (2004). In addition, this Court views the evidence in the light most favorable to the wife, as the prevailing party below, "granting her the benefit of any reasonable inferences" flowing from the evidence. Robinson, 54 Va. App. at 92, 675 S.E.2d at 875.

In fashioning an award of spousal support, a circuit court "must consider all the factors enumerated in Code § 20-107.1(E)." Fox, 61 Va. App. at 203, 734 S.E.2d at 671. Specifically, the court "shall consider the circumstances and factors which contributed to the dissolution of the marriage." Code § 20-107.1(E). In addition, it is required to consider the parties' needs, financial resources, standard of living during the marriage, ages, nonmonetary and monetary contributions to the well-being of the family, contributions to each other's careers, property interests, and earning capacities. Id. Further, the court must take into account the duration of the marriage, equitable distribution of the marital property, and "[s]uch other factors . . . as are necessary to consider the equities between the parties." Id. However, the court "is not 'required to quantify or elaborate exactly what weight or consideration it has given'" each of the factors enumerated in Code § 20-107.1(E). Fox, 61 Va. App. at 203, 734 S.E.2d at 671 (quoting Woolley, 3 Va. App. at 345, 349 S.E.2d at 426). "Where [an] evidentiary foundation exists and the record discloses that the trial court has given consideration to each of the statutory factors, we will not disturb its determination as to spousal support on appeal." Id. at 203-04, 734 S.E.2d at 671.

### 1. Consideration of the Equitable Distribution Award

A circuit court considering a spousal support award must take into account equitable distribution assets under Code § 20-107.1(E). However, the legislature intended "to maintain an appropriate separation between considerations of spousal support and considerations of an

equitable distribution of marital wealth." Gamble v. Gamble, 14 Va. App. 558, 577, 421 S.E.2d 635, 646 (1992). The purpose of equitable distribution is to divide the marital estate "between spouses based upon each spouse's contribution to the acquisition, preservation, or improvement of property obtained during the marriage." Lightburn v. Lightburn, 22 Va. App. 612, 619, 472 S.E.2d 281, 284 (1996). In contrast, in determining spousal support, a circuit court must "consider the equities between the parties" as well as "[t]he standard of living established during the marriage." Robinson, 54 Va. App. at 96, 675 S.E.2d at 877 (alteration in original) (quoting Code § 20-107.1).

Although a circuit court considering a spousal support award must take into account the equitable distribution determination, this Court "view[s] that requirement as a practical means by which the [circuit court] may fix a proper spousal support award in light of the financial result of the monetary award." Gamble, 14 Va. App. at 577, 421 S.E.2d at 646. The circuit court "must consider . . . income and expenses generated by the asset assignment constituting the equitable distribution award." Rowe v. Rowe, 24 Va. App. 123, 139, 480 S.E.2d 760, 767 (1997).

In this case, the circuit court *considered* the amount of the wife's equitable distribution in fashioning the spousal support award. Further, it specifically noted the testimony of Wirwille about how much she could expect to withdraw from those assets. However, the court did not look favorably upon his calculation, which relied on the wife's liquidating her assets, investing them according to his recommendations, and eventually depleting those funds entirely. The court concluded that since the division of assets was equal, it would be inequitable to require the wife to dissipate her assets for living expenses without imposing the same requirement on the husband. See generally Barker v. Barker, 27 Va. App. 519, 529, 500 S.E.2d 240, 245 (1998) ("[I]t is improper for a trial court to treat assets divided in equitable distribution as income.").

The husband alternatively contends that the court, by rejecting Wirwille's testimony, entirely ignored the income-generating potential of the wife's assets. Again, the record establishes that the circuit court considered the equitable distribution assets and potential income generated from those assets, but simply did not assign the weight to those circumstances that the husband requested. The contention that the court "should have weighed the evidence differently than it did . . . is not a proper appellate argument." Fadness v. Fadness, 52 Va. App. 833, 846, 667 S.E.2d 857, 864 (2008).

In this case, the circuit court heard evidence on the Code § 20-107.1(E) factors relevant to the parties' almost thirty-year marriage. The court made numerous factual findings related to those factors, and those findings are supported by the evidence. The wife was a stay-at-home mother based upon the parties' mutual agreement. She "enabled" the husband's earnings by being the primary caregiver of their child. The court concluded that although the husband's adultery was not the ultimate cause of the dissolution of the marriage, it was a "significant factor." The parties accumulated substantial assets during the marriage, which the circuit court divided evenly. The husband earned an average annual income of around $600,000. The wife, although physically and mentally able, was fifty-seven years old and lacked any meaningful employment history or current marketable skills.

The circuit court considered all the factors listed in Code § 20-107.1(E) in awarding spousal support "and provided the reasoning and the factual basis for its award." Fadness, 52 Va. App. at 847, 667 S.E.2d at 864. The record, viewed in the light most favorable to the wife, supports the court's factual findings. The circuit court was not plainly wrong in awarding the wife $12,000 a month in spousal support. Under these circumstances, the court did not abuse its discretion in determining the amount of the award. Consequently, "we will not disturb its determination as to spousal support." Fox, 61 Va. App. at 204, 734 S.E.2d at 671.

## 2. Calculation of the Wife's Income

The husband also argues that the court erred by failing to account for the wife's current income. The current income of a party is a required consideration in determining a spousal support award. Gamble, 14 Va. App. at 575, 421 S.E.2d at 645. Although the wife testified that she worked as a part-time seasonal volleyball coach, the record contains no evidence of the income that she earned, if any, from that position. Therefore, the court certainly acted within its discretion by not factoring the wife's volleyball income into its determination.[2]

In addition, the husband contends that the circuit court erred by failing to impute income to the wife based on her plans to teach dance and his expert's testimony regarding her employment income potential. "A court may under appropriate circumstances impute income to a party seeking spousal support." Srinivasan v. Srinivasan, 10 Va. App. 728, 734, 396 S.E.2d 675, 679 (1990). "The decision to impute income is within the sound discretion of the trial court[,] and its refusal to impute income will not be reversed unless plainly wrong or unsupported by the evidence." deCamp v. deCamp, 64 Va. App. 137, 149, 765 S.E.2d 863, 869 (2014) (quoting McKee v. McKee, 52 Va. App. 482, 489, 664 S.E.2d 505, 509 (2008) (*en banc*)). "The party seeking imputation has the burden of proving that [his] spouse was voluntarily forgoing employment and 'is required to present evidence "sufficient to enable the trial judge reasonably to project what amount [of income] could be anticipated."'" Id. at 150, 765 S.E.2d at 870 (second alteration in original) (quoting McKee, 52 Va. App. at 490, 664 S.E.2d at 510). In addition, "the trier of fact ascertains a witness' credibility, determines the weight to be given to [his or her] testimony, and has the discretion to accept or reject any of the witness' testimony." Street v. Street, 25 Va. App. 380, 387, 488 S.E.2d 665, 668 (1997).

---

[2] Similarly, to the extent that the husband relies on Melberg's testimony that the wife had been hired on a "project basis" at $18 an hour, the court was entitled to find this testimony was not persuasive because the record did not establish that she earned any money from the position.

Moreover, "the fact finder is not required to accept the testimony of an expert witness merely because he or she has qualified as an expert." Id.

"Whether to impute income to a spouse seeking support is simply one component of calculating the 'amount' of support under the statutory factors . . . ." Brandau v. Brandau, 52 Va. App. 632, 638, 666 S.E.2d 532, 535 (2008). "Whether to impute income also depends, in part, on a conscientious consideration of all factors, including the 'standard of living established during the marriage,' the 'duration of the marriage,' and the positive and negative 'contributions, monetary and nonmonetary, of each party to the well-being of the family.'" Id. at 638-39, 666 S.E.2d at 526 (quoting Code § 20-107.1). Further, there is no requirement that a circuit court impute income to "a stay-at-home spouse capable of working." Id. at 640, 666 S.E.2d at 536.

In the instant case, the court considered the evidence regarding the wife's employment capacity but declined to impute income based on the difficulty it foresaw in her obtaining meaningful employment. The circuit court's refusal to impute employment income to the wife was not plainly wrong.[3]

      3. Factual Finding that the Husband "Admitted" He Could Pay Any Amount

The husband contends that the circuit court made the erroneous factual finding that he agreed that he had the resources to pay any amount of spousal support. The husband construes this finding from the following sentence in the letter opinion: "Mr. Gordon admittedly has the ability to pay whatever amount the Court awards." The husband is correct that he did not admit that he could pay any amount of spousal support. However, we decline the husband's invitation to fix upon an isolated statement of the circuit court "taken out of the full context in which [it

---

[3] In addition, the court's conclusion that "chances [were] small" that the wife would "have substantial earnings in the next few years," and its description of the spousal support award as "modifiable" left "open the possibility of recalibrating the support award at some later date as conditions change." Brandau, 52 Va. App. at 641, 666 S.E.2d at 537.

was] made." See Yarborough v. Commonwealth, 217 Va. 971, 978, 234 S.E.2d 286, 291 (1977). This sentence was simply an expression of the judge pro tempore's opinion that the spousal support award was not significantly limited by the husband's ability to pay. See, e.g., id. ("Absent clear evidence to the contrary in the record, the judgment of a trial court comes to us on appeal with a presumption that the law was correctly applied to the facts."). Consequently, this assignment of error is without merit.

### 4. Award Disproportionate to the Wife's Expenses

The husband argues that the award was excessively high in light of the court's findings regarding the wife's expenses. This argument relies on the "erroneous assertion that the only purpose of spousal support is to maintain the dependant spouse in the standard of living enjoyed during the marriage." Robinson, 54 Va. App. at 95, 675 S.E.2d at 877; see also Miller v. Cox, 44 Va. App. 674, 685, 607 S.E.2d 126, 131 (2005) (holding that "the parties' savings plan during the marriage" was a "mandatory" consideration). Therefore, the circuit court did not abuse its discretion by awarding spousal support in an amount higher than the wife's monthly expenses. See Robinson, 54 Va. App. at 95-98, 675 S.E.2d at 877-78.

### 5. Reliance on Muth's Testimony

The husband contends that the circuit court erroneously relied upon the report of the wife's accountant witness, Muth, to calculate the wife's tax obligations. He reasons that the smallest monthly support level that Muth calculated was $15,000 and, thus, that his estimation of the wife's tax expense was higher than her actual need. However, the husband did not make this argument or raise this objection below. He did not include this reasoning in his closing argument. It is not listed in his objections to the circuit court order. Finally, he did not file a motion to reconsider. Although the husband claimed in his response to the wife's motion to

reconsider that the circuit court erred in awarding spousal support, he did not mention Muth's testimony.

"No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice." Rule 5A:18; see Edwards v. Commonwealth, 41 Va. App. 752, 760, 589 S.E.2d 444, 448 (2003) (*en banc*), aff'd by unpub'd order, No. 040019 (Va. Oct. 15, 2004) ("Making one specific argument on an issue does not preserve a separate legal point on the same issue for review."). This Court will not consider an argument on appeal unless it was presented to the circuit court with specificity and in time for the court to correct any error. See, e.g., Tackett v. Arlington Cty. Dep't of Human Servs., 62 Va. App. 296, 315, 331-32, 746 S.E.2d 509, 518-19, 527 (2013). The appellant does not raise the ends-of-justice or good cause exception to Rule 5A:18. See Jones v. Commonwealth, 293 Va. 29, 39 n.5, 795 S.E.2d 705, 710 n.5 (2017) (declining to "*sua sponte* raise" either of these exceptions on the defendant's behalf). After a review of the record, we conclude that Rule 5A:18 bars the Court's consideration of this specific issue. Budnick v. Budnick, 42 Va. App. 823, 843, 595 S.E.2d 50, 60 (2004) (applying Rule 5A:18 to bar the appellant's challenge to a child support award because he raised the issue "for the first time on appeal").

## B. Attorney's Fees and Costs

The wife asks that she be awarded her costs and attorney's fees incurred on appeal. Whether to award attorney's fees and costs on appeal is discretionary. See Rule 5A:30(b); see also Harper v. Dep't of Taxation, 250 Va. 184, 194, 462 S.E.2d 892, 898 (1995) (noting that use of the word "may" in a statute usually denotes discretion). We award appellate fees only if the arguments on appeal are "not fairly debatable under any reasonable construction of the record or the governing legal principles." Brandau, 52 Va. App. at 642, 666 S.E.2d at 538. In addition,

- 11 -

this Court takes into consideration factors such as whether the requesting party has prevailed, whether the appeal was frivolous, whether either party generated unnecessary expense or delay in pursuit of its interest, and whether other reasons exist to support an award of fees and costs. See Rule 5A:30(b); Estate of Hackler v. Hackler, 44 Va. App. 51, 75, 602 S.E.2d 426, 438 (2004); O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996). After reviewing the record and all of the claims raised by the husband, we decline to award the wife attorney's fees and costs.

### III. CONCLUSION

We hold that the circuit court considered the required statutory factors in determining the amount of the spousal support award, and its factual findings have evidentiary support in the record. Therefore, we conclude that the court did not abuse its discretion in fashioning the award. Consequently, we affirm the circuit court's judgment. Further, we deny the wife's request for attorney's fees and costs incurred on appeal.

Affirmed.