COURT OF APPEALS OF VIRGINIA

Present:  Judges AtLee, Friedman and Callins
Argued by teleconference


CHARLES GREGORY DOANE

                                                    MEMORANDUM OPINION* BY
v.        Record No. 0282-25-3                      JUDGE FRANK K. FRIEDMAN
                                                    FEBRUARY 10, 2026
CHRISTINE JILL DOANE


FROM THE CIRCUIT COURT OF BEDFORD COUNTY
James W. Updike, Jr., Judge

Philip B. Baker (Sanzone & Baker, L.L.P., on brief), for appellant.

No brief or argument for appellee.


Charles Gregory Doane (husband) appeals the circuit court's final decree of divorce

entered January 17, 2025. He contends that the circuit court erred by: (1) declining to impute

income to Christine Jill Doane (wife) and consequently awarding her spousal support;

(2) classifying the down payment made on the marital residence as wife's separate property; and

(3) declining to allocate husband "sweat equity" for improvements made to the marital residence.

For the following reasons, we find no error in the circuit court's judgment and affirm its

decision.

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

BACKGROUND[1]

The parties were married on March 9, 2008. They have one son together who was born in 2010. They separated on April 9, 2022, and husband filed for divorce on July 12, 2023.

Before her marriage to husband, wife purchased a house in Concord, Virginia (the Concord house); her name was the only one on the deed and promissory note for that house. Husband moved into the Concord house after they got married, and for the entire time they lived there (about seven years), he paid somewhere between $250 and $400 per month to help with the mortgage and utilities. In 2015, the pair moved to Forest, Virginia and purchased their marital residence (the Forest house). Wife sold the Concord house and used the proceeds from that sale to put a down payment of $13,652 on the Forest house.

At trial, husband testified that he made significant improvements to the Forest house while he and wife lived there, namely by adding a garage and a rec room. For the garage, he hired a concrete company to lay a twenty-by-twenty slab. He then purchased two-by-fours, drywall, and siding, and "enclosed" the room by "run[ning] the electrical" and putting in flooring, a ceiling fan, lights, windows, and a door. For the rec room, he had the concrete company lay a sixteen-by-twenty slab, and then he painted the floors, built a loft, hung lights, and ran electricity to it. Dodd Harvey, a certified real estate appraiser, assessed the value of the garage at $17,000 and the rec room at $20,000, for a total of $37,000.

On March 8, 2024, wife was diagnosed with stage III breast cancer. She had surgery in April to remove a tumor and several lymph nodes in her arm, to which the cancer had spread. Her treatment plan included five months of chemotherapy, followed by radiation and adjuvant

---

[1] "On appeal, 'we view the evidence in the light most favorable to the prevailing party, granting it the benefit of any reasonable inferences.'" *Sobol v. Sobol*, 74 Va. App. 252, 260 n.1 (2022) (quoting *Mills v. Mills*, 70 Va. App. 362, 368 (2019)). Accordingly, we review the record in the light most favorable to wife.

- 2 -

endocrine therapy. At the time of trial, she had applied for disability benefits, but the claim was still being reviewed. She testified that she was unable to work full-time because of her cancer treatment schedule and the side effects of the chemotherapy but admitted that none of her doctors had told her that she could not work.

In the summer of 2024, wife was working for a law firm, and she and husband were in the midst of a dispute over health insurance. She testified that he dropped her from his health insurance while she was undergoing her cancer treatment.[2] On August 1, 2024, wife went to husband's workplace around lunchtime and "severely damaged" his motorcycle. She was arrested for destruction of property and consequently fired from the law firm.[3]

In its letter opinion and final decree of divorce, the circuit court, "[u]pon consideration of [her] current medical condition," did not find wife voluntarily unemployed and declined to impute income to her. It therefore ordered husband to pay her $1,000 per month in permanent spousal support. Concerning equitable distribution, the circuit court found that the $13,652 down payment on the Forest house was wife's separate property, as it came from the sale of her Concord house. Finally, the circuit court declined husband's request to allocate to him a separate contribution of "sweat equity" that enhanced the value of the Forest house by $37,000. The court explained that "any materials used during construction of such enhancements were presumably purchased with marital funds, and if there was any separate contribution on the part of husband, . . . he has not sufficiently traced such contribution to a separate source."

---

[2] Husband testified that it was the insurance company's choice, not his, to drop wife from his health insurance.

[3] Because wife had pending criminal charges at the time of trial for the destruction of property, she asserted her Fifth Amendment privilege against self-incrimination and did not testify about many of the details of this event. She did, however, admit that she damaged husband's motorcycle and that she was fired because of her arrest.

ANALYSIS

I. The Circuit Court Did Not Err by Awarding Wife Spousal Support Because It Properly Found That Wife Was Neither Voluntarily Unemployed nor Subject to Income Imputation

A. Standard of Review

"Spousal support determinations typically involve fact-specific decisions best left in the 'sound discretion' of the trial court." *Brandau v. Brandau*, 52 Va. App. 632, 641 (2008) (quoting *McKee v. McKee*, 52 Va. App. 482, 489 (2008) (en banc)). "Unless the trial judge misapplies the legal standard or misallocates the burden of proof, the question of '[w]hether a person is voluntarily unemployed or underemployed is a factual determination.'" *Nielsen v. Nielsen*, 73 Va. App. 370, 383 (2021) (alteration in original) (quoting *Broadhead v. Broadhead*, 51 Va. App. 170, 180 (2008)). "Employing the most deferential standard of appellate review, we reverse factual findings 'only if plainly wrong or not supported by credible evidence.'" *Id.* (quoting *Broadhead*, 51 Va. App. at 181).

Similarly, but separately, "[t]he decision to impute income is within the sound discretion of the trial court and its refusal to impute income will not be reversed unless plainly wrong or unsupported by the evidence." *deCamp v. deCamp*, 64 Va. App. 137, 149 (2008) (quoting *McKee*, 52 Va. App. at 489).

B. The Trial Court Was Within Its Discretion in Finding That Wife Was Neither Voluntarily Unemployed nor Subject to Income Imputation

"In setting or modifying spousal support or child support, a court may impute income to a party voluntarily unemployed or underemployed." *Blackburn v. Michael*, 30 Va. App. 95, 102 (1999). "The party seeking imputation has the burden of proving that their spouse was voluntarily forgoing employment and 'is required to present evidence "sufficient to enable the trial judge reasonably to project what amount [of income] could be anticipated."'" *deCamp*, 64 Va. App. at 150 (alteration in original) (quoting *McKee*, 52 Va. App. at 490).

- 4 -

Courts often consider a party voluntarily unemployed when their employment has been terminated because of their own poor performance or misconduct. *See, e.g.*, *Edwards v. Lowry*, 232 Va. 110, 113 (1986) (finding defendant voluntarily unemployed where he was fired for stealing); *Garrett v. Garrett*, No. 1440-16-4, slip op. at 9-10, 2017 Va. App. LEXIS 104, at *14-15 (Apr. 18, 2017) (finding husband voluntarily unemployed where former manager "testified concerning [his] poor work performance and his ineligibility for rehire")[4]; *Parham v. Parham*, No. 2061-17-2, slip op. at 9-10, 2018 Va. App. LEXIS 262, at *14 (Oct. 9, 2018) (finding defendant voluntarily unemployed where he lost his job "because he neglected the requirements of his employment"); *cf. Niblett v. Niblett*, 65 Va. App. 616, 631 n.3 (2015) (finding incarcerated father voluntarily unemployed for child support purposes because "a parent should not be permitted 'to shift to his wife and children the consequences of his wrongdoing'" (quoting *Layman v. Layman*, 25 Va. App. 365, 368 (1997))).

On the other hand, even where parties have technically "chosen" to leave their jobs, courts have often declined to find them voluntarily unemployed if they had legitimate reasons for quitting. For instance, in *Nielsen*, the trial court acknowledged that there "was no gun to his head" when husband accepted a "voluntary separation package," but concluded that he was "impelled" to leave his job "because of circumstances outside his control," including changes in his responsibilities and job title. 73 Va. App. at 384. Likewise, in *Department of Social Services, Division of Child Support Enforcement ex rel. Bowyer v. Bowyer*, No. 0071-96-4, slip op. at 5, 1997 Va. App. LEXIS 213, at *6-7 (Apr. 8, 1997), the trial court found that "father's decision to resign from his salaried position was not the result of a voluntary choice, but rather was the result of 'life-threatening' medical problems." We affirmed the trial court in that case

---

[4] We cite unpublished cases for their persuasive value, not as binding authority. Rule 5A:1(f).

and—notably—rejected mother's argument that the trial court's reliance on father's testimony alone was insufficient to support its finding. *Id.*, slip op. at 5, 1997 Va. App. LEXIS 213, at *7. *But see O'Hara v. O'Hara*, 45 Va. App. 788, 798 (2005) (affirming the trial court's imputation of income where wife had serious health issues but was still able to work and had left her job not because of her health, but because of a dispute over compensation).

Additionally, even where a court finds that a party is voluntarily unemployed, income imputation is never mandatory. *See Murphy v. Murphy*, 65 Va. App. 581, 586 (2015) ("The law does not require a trial court to impute income in all cases of voluntary under-employment, as this would usurp the discretion expressly granted to the trial court by the legislature."); *Saleem v. Saleem*, 26 Va. App. 384, 393 (1998) ("A trial court has *discretion* to impute income to [a party] who is voluntarily unemployed." (alteration in original) (emphasis added) (quoting *Bennett v. Commonwealth*, 22 Va. App. 684, 691 (1996))).

Here, wife's arrest and ensuing termination—which she concedes were caused by her own willful misconduct—would likely suffice for a finding of voluntary unemployment. *See Edwards*, 232 Va. at 113. But the circuit court was still within its discretion to decline to find wife voluntarily unemployed in light of her medical issues.

Husband argues that wife's medical evidence (her doctors' medical notes and her own lay testimony) was insufficient to "refute[]" his income imputation argument because there was no indication that she "was unable to work or was taken out of work by her physician." But he cites no authority—nor is there any—to support the proposition that one who chooses not to work because of their health issues is necessarily voluntarily unemployed unless their doctor has verified that they are entirely incapable of working. On the contrary, medical evidence, including lay testimony as to one's own condition, has been found to be a sufficient reason to decline to impute income. *See, e.g.*, *Bowyer*, slip op. at 5, 1997 Va. App. LEXIS 213, at *6-7;

*see also Mullin v. Mullin*, 45 Va. App. 289, 302-03 (2005) (affirming modification of child support where mother's uncontradicted lay testimony about son's disability was sufficient to infer that son could not "live independently and support himself").

Further, even if the circuit court agreed with husband that wife was voluntarily unemployed, it still would not have been required to impute income to her. *Murphy*, 65 Va. App. at 586. In other words, even if the court found wife's medical evidence lacking when determining whether she was voluntarily unemployed, it still could have considered that evidence when making its separate "discretion[ary]" decision on income imputation. *Id.*

Considering the facts in the light most favorable to wife, the circuit court's decision not to impute income to her was not "plainly wrong," nor was it "unsupported by the evidence." *deCamp*, 64 Va. App. at 149. The court therefore did err by awarding wife spousal support.

## II. The Circuit Court Correctly Classified the Down Payment as Wife's Separate Property

Upon decreeing a divorce, the circuit court must determine "the ownership and value of all property, real or personal, tangible or intangible, of the parties and . . . consider which of such property is separate property, which is marital property, and which is part separate and part marital property." Code § 20-107.3(A). "A circuit court's classification of property or debt is a finding of fact that 'will not be reversed on appeal unless it is plainly wrong or without evidence to support it.'" *Price v. Peek*, 72 Va. App. 640, 647 (2020) (quoting *Ranney v. Ranney*, 45 Va. App. 17, 31-32 (2005)).

As relevant here, separate property includes "all property, real and personal, acquired by either party before the marriage," while marital property includes "all other property acquired by each party during the marriage which is not separate property," including, in most cases, income earned during the marriage. Code § 20-107.3(A)(1) and (2); *see Barnes v. Barnes*, 16 Va. App. 98, 104 (1996) ("[P]roperty acquired during the marriage is presumed to be marital and property

acquired before marriage is presumed to be separate."). Finally, Code § 20-107.3(A)(3)(d) provides:

> When marital property and separate property are commingled by contributing one category of property to another, resulting in the loss of identity of the contributed property, the classification of the contributed property shall be transmuted to the category of property receiving the contribution. However, to the extent the contributed property is retraceable by a preponderance of the evidence and was not a gift, such contributed property shall retain its original classification.

Husband argues that the circuit court erred by classifying the $13,652 down payment on the Forest house as wife's separate property. It is undisputed that husband contributed up to $400 per month to the mortgage and utilities at the Concord house before he and wife moved. Husband explains that these funds helped generate "sufficient equity in the Concord property to fund a portion of the Forest residence down payment." He argues that because his payments were commingled with wife's existing equity in the Concord house, the funds are not traceable and should be considered marital property, subject to equitable distribution. We disagree.

Two of our cases in this area are instructive. First, in *Moran v. Moran*, 29 Va. App. 408 (1999), the wife owed a separate debt on property that she purchased before her marriage. *Id.* at 411. After she got married, she and her husband used marital funds to pay down that debt. *Id.* On appeal, this Court held that the property at issue was correctly classified as hybrid property—part separate, part marital. *Id.* at 413-14. The Court acknowledged that the parties "commingled marital funds with separate property, resulting in the presumption that the marital funds were transmuted to separate property," but found that the husband satisfactorily traced the marital funds to a corresponding reduction in the *principal* of the debt owed. *Id.* at 413 ("[T]o the extent the marital funds reduced the principal of the mortgage, that amount is traceable from the separately acquired equity."). The traceable portion of the equity was marital property—it was not transmuted to separate property—while the remainder was the wife's separate property. *Id.*

Second, in *Duva v. Duva*, 55 Va. App. 286 (2009), the husband owned separate property in Rhode Island that he had purchased before marriage. *Id.* at 292. The parties lived in that property for about one year. *Id.* When they moved, they leased the property, depositing the rental income into a joint account. *Id.* The husband also deposited his paycheck into that account. *Id.* Marital funds in that account—including the husband's paychecks, properly classified as marital property—were eventually used to pay the mortgage on the Rhode Island property. *Id.* This Court held that "[u]nder Code § 20-107.3(A)(3)(d), the marital funds, by paying the mortgage on the separate property, were commingled with the Rhode Island property (the receiving property) and were transmuted into th[at] separate property." *Id.* at 294. It was then the wife's burden to "trace the contribution for the marital funds to retain the classification of marital property." *Id.* She did not meet that burden. *Id.*

Here, wife purchased and took title to the Concord house before she married husband. *See id.* at 299 (holding that the date of acquisition is when the owner takes title to property). That house was her separate property. Code § 20-107.3(A)(1). For the seven years the pair lived at the Concord house, husband contributed around $400 of his income every month to help pay the mortgage and utilities at the Concord house. His income was marital property. Code § 20-107.3(A)(2). Under Code § 20-107.3(A)(3)(d), then, the classification of the contributed property was transmuted to the category of the receiving property. In other words, because he contributed it to the mortgage on the Concord house, husband's income was transmuted from marital property into wife's separate property.

Because the parties "commingled marital funds with separate property, resulting in the presumption that the marital funds were transmuted to separate property," it was husband's burden to trace his contributions by a preponderance of the evidence in order to retain their classification as marital property. *Moran*, 29 Va. App. at 413. He failed to meet that burden.

Although the parties agreed at trial that husband contributed up to $400 each month to the mortgage and utilities while they lived at the Concord house, husband never indicated how much of that went to the mortgage and how much went to utilities. Nor did he provide any evidence showing that his contributions reduced the principal of the mortgage rather than the interest. *See id.* ("[T]o the extent the marital funds reduced the *principal* of the mortgage, that amount is traceable from the separately acquired equity." (emphasis added)).[5]

Husband failed to trace his contributed property, so it was transmuted to wife's separate property. The proceeds from the sale of the Concord house were her separate property, and she then sufficiently traced her contribution of $13,652 to the Forest house. *See* Code § 20-107.3(A)(3)(e) (requiring tracing to retain classification as "separate property" where "marital property and separate property are commingled into newly acquired property"). Thus, the circuit court correctly classified the $13,652 down payment on the marital residence as wife's separate property.

### III. The Circuit Court Did Not Err by Declining to Allocate a Separate Contribution to Husband Based on His Claim of "Sweat Equity"

"In reviewing an equitable distribution award on appeal, we have recognized that the trial court's job is a difficult one, and we rely heavily on the discretion of the trial judge in weighing the many considerations and circumstances that are presented in each case." *Stark v. Dinarany*, 73 Va. App. 733, 749-50 (2021) (quoting *Wright v. Wright*, 61 Va. App. 432, 449-50 (2013)). "Accordingly, 'decisions concerning equitable distribution rest within the sound discretion of the trial court[.]'" *Id.* at 750 (alteration in original) (quoting *Wright*, 61 Va. App. at 450). "The

---

[5] Husband suggests that if we find that the down payment was composed of both separate and marital property, we should remand the case to determine what portion of the $13,652 was attributable to husband and what portion to wife. But that was exactly what husband should have done—yet failed to do—at trial. This appeal is not an opportunity for him "to take a mulligan." *Slusser v. Commonwealth*, 74 Va. App. 761, 778 (2022) (quoting *Ala. Legis. Black Caucus v. Alabama*, 575 U.S. 254, 282 (2015) (Scalia, J., dissenting)).

circuit court's 'discretion is limited only in that the circuit court must consider all of the factors in Code § 20-107.3(E).'" *Id.* (quoting *Fadness v. Fadness*, 52 Va. App. 833, 842 (2008)). And the trial court is not required "to quantify or elaborate exactly what weight or consideration it has given to each of the statutory factors." *Gottlieb v. Gottlieb*, 19 Va. App. 77, 94 (1994). "If the circuit court considers all the factors and bases its findings on credible evidence, we will not disturb its decision on appeal." *Stark*, 73 Va. App. at 750 (quoting *Fadness*, 52 Va. App. at 842). We will overturn an equitable distribution award only if we find "an abuse of discretion, misapplication or wrongful application of the equitable distribution statute, or lack of evidence to support the award." *Wiencko v. Takayama*, 62 Va. App. 217, 229-30 (2013) (quoting *McIlwain v. McIlwain*, 52 Va. App. 644, 661 (2008)).

Code § 20-107.3(E) lists several factors that a court must consider when making an equitable distribution award. Among those factors are "[t]he contributions, monetary and nonmonetary, of each party in the acquisition and care and maintenance of [the] marital property of the parties." Code § 20-107.3(E)(2); *see Stark*, 73 Va. App. at 750-51 (noting that wife made "substantial nonmonetary contributions" by working with the realtor to find and purchase the marital home and working with contractors on kitchen and bathroom renovations).

Husband argues that the circuit court erred in declining to allocate a separate contribution of $37,000 to him based on his construction of the garage and rec room at the Forest house. We disagree and find no error in the circuit court's decision.

First, as far as monetary contributions, the court explained that "any materials used during construction of [the] enhancements were presumably purchased with marital funds" and found that "if there was any separate contribution on the part of husband, . . . he has not sufficiently traced such contribution to a separate source." The classification of the monetary

- 11 -

contributions is a factual finding supported by the evidence in the record, so we defer to the circuit court's holding. *Price*, 72 Va. App. at 647.

Second, husband made no effort to distinguish between monetary contributions (i.e., the marital funds he used to pay the concrete company and purchase materials) and nonmonetary contributions (i.e., his own labor, or what he calls "sweat equity"). Rather, he simply added up the value of the garage and the rec room and asked for an allocation of the total sum. Had husband provided evidence delineating the value of his individual labor, the circuit court could have classified that amount as husband's separate property. But absent such evidence, the court was not required to speculate about the value of husband's labor or to allocate to him the full $37,000 he requested. True, Code § 20-107.3 "'mandates' that trial courts determine the ownership and value of all real and personal property of the parties." *Bowers v. Bowers*, 4 Va. App. 610, 617 (1987) (quoting *Hodges v. Hodges*, 2 Va. App. 508, 516 (1986)). But "the litigants have the burden to present evidence sufficient for the court to discharge its duty." *Id.* And "[r]eviewing courts cannot continue to reverse and remand . . . [equitable distribution] cases where the parties have had an adequate opportunity to introduce evidence but have failed to do so. Parties should not be allowed to benefit on review for their failure to introduce evidence at trial." *Id.* (alterations in original) (quoting *In re Marriage of Smith*, 448 N.E.2d 545, 550 (Ill. 1983)).

Lastly, while the circuit court did not expressly discuss husband's nonmonetary contributions in its letter opinion, it was not required "to quantify or elaborate exactly what weight or consideration it has given to each of the statutory factors." *Gottlieb*, 19 Va. App. at 94. Moreover, "[a]lthough the separate contribution of one party to the acquisition, care, and maintenance of marital property is a factor that the trial court must consider . . . , Code § 20-107.3 does not mandate that the trial court award a corresponding dollar-for-dollar credit

for such contributions."  *von Raab v. von Raab*, 26 Va. App. 239, 249-50 (1997); *see also Payne v. Payne*, 77 Va. App. 570, 597 (2023) ("[Code § 20-107.3(E)] does not prescribe a set formula that trial courts must apply when dividing assets and liabilities.").  The court here found that husband failed to show any separate monetary contributions and determined, in its discretion, that husband's nonmonetary contributions did not warrant an allocation of $37,000.

The circuit court did not abuse its discretion and there is sufficient evidence in the record to support its equitable distribution award.

CONCLUSION

For the foregoing reasons, the circuit court's judgment is affirmed.

*Affirmed.*